Shafer and others vs. The Phœnix Ins. Co. of Brooklyn.

SHAFER and others vs. The Phœnix Insurance Company of Brooklyn.

*October 21 — November 3, 1881.*

REVERSAL OF JUDGMENT. *(1) Admission of evidence for plaintiff after nonsuit denied. Remarks of judge. (2) Reversal on weight of evidence.*

INSURANCE AGAINST FIRE. *(3-5) Waiver, by insurer's agent, of conditions of policy. By what knowledge of agent insurer is bound. Estoppel to deny renewal of policy. (6) Condition construed. (7) General rule as to conditions in policy.*

1. A judgment will not be reversed because, after a nonsuit had been denied, plaintiff was permitted to introduce additional evidence, nor because, after appellant had asked for a special verdict, the judge remarked that he could see no necessity for one, but did submit to the jury for special verdict proper questions covering the controverted issues of fact.

2. There was evidence in this case which supports the findings of the jury on the material issues; and the judgment will not be reversed on the ground that those findings were against the weight of evidence.

3. A condition in an insurance policy for a forfeiture in case a judgment lien should exist upon the property or proceedings should be commenced to foreclose a mortgage upon it, is *waived* by the act of the insurer's agent in renewing the policy with knowledge of such judgment lien or of such foreclosure proceedings.

4. The agent's knowledge, though not acquired in his capacity as agent, or while engaged in the transaction of his principal's business, will still bind the insurer, if he possessed such knowledge when he received the policy; though he is not bound to charge his mind with all rumors or loose information coming to his knowledge.

5. The policy provided that if it should become void for any cause, it should not be revived by the issue of a renewal receipt, or in any other way except by special contract for that purpose written thereon, or by the issuing of a new policy. *Held,* that it was competent for the agent, acting for the insurer, to waive this as well as other conditions of the policy; and that the insurer, after the issue of the renewal receipt, and especially after having received the premium, was *estopped* to deny the contract.

6. A condition avoiding the policy in case of "the issuing or levy of an execution, *without actual possession,* against any kind of property insured," *held* not intended to apply to *real estate.*

7. Conditions inserted in a policy by the insurer, to work a forfeiture, should be plain, easily understood, and free from ambiguity.

APPEAL from the Circuit Court for *Winnebago* County.

Action on a policy of insurance upon a brick building. The policy was issued October 3, 1878, insuring the property for one year; and the complaint alleges that it was renewed for one year upon the 3d of October, 1879. The property was destroyed November 18, 1879. The defense set up by the insurer, and the errors alleged to have occurred at the trial, will appear from the opinion.

The policy contained the following among other provisions: " If the property be sold or transferred, or upon the commencement of foreclosure proceedings against, or a sale under a deed of, or the existence of a judgment lien upon, or the issue or levy of an execution without actual possession against, any kind of property hereby insured, or if the property insured be assigned under any bankrupt or insolvent law, or any change take place in the title or possession (except in case of succession by reason of the death of the assured), whether by legal process or judicial decree, or voluntary transfer or conveyance; . . . then and in every such case this policy is void. The use of general terms, or anything less than a distinct special agreement, clearly expressed and indorsed on this policy, shall not be construed as a waiver of any printed or written condition or restriction herein. This insurance (the risk not being changed) may be continued for such further time as shall be agreed on, provided the premium therefor is paid and a receipt given for the same, with the signature of the president and secretary, and countersigned by the regular commissioned agent of the company named thereon; and it shall be considered as continued under the original representation and for the original amounts and divisions, unless otherwise specified. in writing; but in case there shall have been any change in the risk, either within itself or by neighboring buildings, at the time of renewal, the renewal shall be void. Whenever this policy may have become void from any cause, it shall not be revived or reinstated by the issue of any re-

newal certificate or receipt, or in any other way, except by special contract for such reinstating in writing thereon, or by the issuing of a new policy." The renewal continuing in force the policy for another year contained the following provision: "Said renewal being made upon condition that the original policy continues in force, and that there has been no change in the risk since first issued, not noticed in the policy and books of this company, or fully expressed in said application; otherwise this renewal is not binding."

The following instructions asked by the defendant were severally refused: "1. The policy in this case became void by violations of its conditions, and it could not be revived by anything short of a new contract, or by such contract as, by misleading the insured to his prejudice, operates as an estoppel. Mere knowledge of the violation, without other action of the insurance company or its agents, is of no account, and will not operate as an estoppel or a waiver, or a revival of the void policy by the issue of the renewal. 2. In order to charge the defendant with knowledge or notice that the conditions of the policy had been violated and the policy thereby avoided before or at the time of its renewal, by reason of any notice communicated to or knowledge acquired by any of its agents, you must find that such notice to or knowledge of the agent was acquired in his capacity as agent of the defendant, and while engaged in the business or negotiation of the defendant, and when it would be a breach of trust in the agent not to communicate the notice or knowledge to the defendant. 3. Notice or knowledge received by the agent, in order to be imputable to the defendant company, must be actual; constructive or implied notice is not sufficient. Nor is notice or knowledge gained in his individual capacity, or while acting on behalf of some other insurance company, enough; nor are rumors or casual remarks coming to him, or made in his presence, sufficient to bind the defendant with knowledge. 4. In determining whether or not the agent had knowledge, at the time of

the renewal, of the foreclosure proceedings commenced by Jefferson Bray, you must take into consideration the rule or custom of the defendant company, if you find such rule or custom to exist, not to issue a policy or a renewal thereof on property against which foreclosure proceedings have been commenced or are pending. The existence of such a rule or custom of the defendant, if you find one to exist, would tend in a reasonable degree to establish the defendant's proposition that the agent, at and before the date of the renewal, had no notice of the fact of the commencement of foreclosure proceedings." The court in its general charge, however, instructed the jury as follows: "If it is established that the company had a rule which forbade agents to renew or issue policies when there had been foreclosure proceedings, that is one of the elements of the evidence, or circumstances tending to determine whether they had such knowledge or not; but it must be taken with all the other circumstances."

The jury, by special verdict, found the facts substantially as they were claimed to be by the plaintiffs; and from a judgment thereupon rendered in plaintiffs' favor, the defendant appealed.

For the appellant there was a brief by *Markham & Noyes*, and oral argument by *Mr. Noyes*. In support of the first instruction asked and refused, they cited *Security Ins. Co. v. Fay*, 22 Mich., 467; *N. Y. Cent. Ins. Co. v. Watson*, 23 id., 486; *Eureka Ins. Co. v. Robinson*, 56 Pa. St., 256. In support of the second instruction they cited *Pringle v. Dunn*, 37 Wis., 449–468; *Forbes v. Agawam Ins. Co.*, 9 Cush., 470–73; 1 Story's Eq. Jur., § 408; in support of the third, *Keenan v. Dubuque Ins. Co.*, 13 Iowa, 375; *Ayres v. Hartford Ins. Co.*, 17 id., 176; *Platt v. Minn. F. M. Fire Ins. Co.*, 23 Minn., 479; *Sykes v. Perry Co. Ins. Co.*, 34 Pa. St., 79; *Schumitsch v. Am. Ins. Co.*, 48 Wis., 26; Wood on Fire Ins., § 404; May on Ins., § 152; in support of the fourth, *Roberts v. Continental Ins. Co.*, 41 Wis., 321. They further con-

tended, among other things, 1. That the verdict of the jury upon the questions submitted to them as to the knowledge of the agent at the date of the renewal, was so contrary to the evidence as to be perverse; and that the court should consider the question of the weight of evidence or the absence of evidence the more carefully in cases of this kind, by reason of the universally recognized "inclination of juries to find against corporations." *Daniels v. Equitable Fire Ins. Co.* (S. C. of Conn.), 10 Ins. Law J., 417–19. 2. That the condition relating to the issue or levy of execution was plainly intended to cover all kinds of insured property. "The statute makes no distinction between executions against realty and personalty." *Kentzler v. Railroad Co.*, 47 Wis., 641–45; R. S., secs. 2967, 2969, 2978, 2992. Not only the statute but the decisions of this court recognize the levy of an execution upon real estate in the same manner as a levy upon personal property. R. S., secs. 2984, 3020–21, 3023; *Holmes v. McIndoe*, 20 Wis., 657, 669–70; *Swift v. Agnes*, 33 id., 228, 236–39; *Vilas v. Reynolds*, 6 id., 214, 229. In all cases of levy possession is taken by the officer; *constructively* in the case of realty *(Vilas v. Reynolds, supra)*, *actually* in the case of personalty *(Brown v. Pratt*, 4 Wis., 513). And that there might be no doubt that the clause in question was intended to cover real estate, the words "without actual possession" were inserted. To cover a case of levy upon personal property also, the clause "any change of the possession by legal process" was inserted. The cases cited to sustain the opposite theory relate to entirely different provisions in the policies there construed. If they have any bearing upon the case at bar, it is only to show that the provision in this policy was designedly so worded as to avoid their effect. *Glen v. Lewis*, 20 Eng. L. & Eq., 364–67; 41 Pa. St., 187. 3. That, in any view of the facts, there was no valid renewal. By the express terms of the policy, the parties agreed that if it should become void from any cause, it should not be revived or reinstated by the issue of any re-

newal certificate or receipt, or in any other way except by special contract for such reinstating in writing thereon, or by a new policy. Both the insured and the agent knew, or are presumed to have known, this express limitation on the powers of the agent; and if the insured entered into an arrangement with the agent known to him to be in excess of the agent's right and power, the company was not bound. *Walsh v. Hartford Ins. Co.*, 73 N. Y., 5; *Fleming v. Hartford Ins. Co.*, 42 Wis., 616.

For the respondents there was a brief by *Winfield & A. A. L. Smith*, and oral argument by *Winfield Smith*.

COLE, C. J. It would be laborious and unprofitable to notice at length the many exceptions relied on by the learned counsel for the defendant to reverse this judgment. Many of the questions discussed by him have already been considered by this court and decided. Of course this court would not reverse a judgment because the trial court permitted the plaintiffs to call a witness to show their respective interests in the insured property after a motion for a nonsuit had been made and denied. That was a matter resting in the discretion of the court below, which this court will not review. The remark which the circuit judge made, to the effect that while counsel requested, as was his right, that the jury should find a special verdict, he could see no necessity for one, could not possibly have prejudiced the defendant. The court did submit certain questions for the jury to answer. These questions seem to cover the controverted issues of fact arising upon the pleadings.

The real defense in the case was based on the ground that the policy was avoided, or did not take effect, in consequence of the recovery of the Sweet and Stevens judgments against the assured, and by the decree of foreclosure of the Bray mortgage. These judgments were entered up in the months of May and June, 1879; the policy was renewed on the third

of October following.　There was a clause in the policy to the effect that if the insured property should be sold or transferred, or foreclosure proceedings be commenced upon a mortgage against it, or a judgment lien should exist upon it, or in case of "the issuing or levy of an execution without actual possession against any kind of property hereby insured, or if the property insured be assigned under any bankrupt or insolvent law, or any change take place in the title," etc., in every such case the policy should be void.　And the important question litigated was, whether the defendant's agent, who renewed its policy, had such notice or knowledge of the existence of these judgments and of the commencement of the foreclosure proceedings as would charge the company and amount to a waiver of the condition of the policy.　The jury distinctly found, in answer to direct questions submitted, that the company had knowledge, when the policy was renewed, of the existence of the judgments, and of the commencement of the proceedings, and the decree, in the foreclosure suit.

It is, however, objected that the verdict of the jury on these points is contrary to the evidence — so much so in respect to some questions as to be perverse.　But, as we understand the testimony in the bill of exceptions, there is evidence which supports the verdict.　It is clearly not the province of this court to decide upon the weight of testimony, or to say which statement of the witnesses, there being a conflict, should be believed.　That is essentially the province of the jury.　It is doubtless the duty of this court to examine the evidence sufficiently to ascertain whether there was testimony which warranted the conclusion the jury drew from it.　On that point we have no hesitation in saying there was ample testimony to sustain the result at which the jury arrived.　The fact cannot be well denied that Caswell, the agent, lived in Omro, where the assured resided.　He had acted for some time as agent for insurance companies which had policies on the building destroyed, including the defendant.　As agent he issued the

defendant's policy and renewed it. He had full authority to make contracts of insurance and bind his principals. About this no question is made. Now, there is certainly evidence which tends to prove that Caswell learned, from conversations which he had with the assured some time prior to the renewal, all about the recovery of the Sweet and Stevens judgments, the commencement of the suit to foreclose the Bray mortgage, and the entry of judgment therein. As there was evidence to show that Caswell had full knowledge of these facts when he renewed the policy, the jury were justified in finding that his knowledge on these matters was the knowledge of the defend- ant, and binding upon it. But it is said and claimed that, in order to charge the defendant with a knowledge of these facts, the agent must have been acting for it at the time he learned about them; in other words, that, unless the agent acquired that knowledge in his capacity as agent of the defendant, and while engaged in the transaction of its business, the company was not bound by it. We see no reason for thus restricting the rule. If the agent, when he renewed the policy, had not forgotten the information which he had received from the as- sured on these subjects,— if he had in his mind these facts concerning the risk, and knew of the existence of the judg- ments and of the foreclosure suit,— why should this not be deemed sufficient and equivalent to a notice to the defendant of the same things? If the agent knew the facts when he was called upon to act for his principal in the matter, that is all we consider necessary. There is no hardship in imputing such knowledge of the agent to the principal. This rule ex- cludes all rumors or loose information, coming to the knowl- edge of the agent, which he is not bound to charge his mind with. Of course, if the agent of the company had knowledge of these facts when he renewed the policy, this would amount to a waiver of the conditions. *Miner v. Ins. Co.*, 27 Wis., 693; *McBride v. Ins. Co.*, 30 Wis., 567; *Devine v. Ins. Co.*, 32 Wis., 476; *Webster v. Ins. Co.*, 36 Wis., 67; *Winans v.*

*Ins. Co.*, 38 Wis., 342; *Mechler v. Ins. Co.*, id., 665; *Roberts v. Ins. Co.*, 41 Wis., 327; *Gans v. Ins. Co.*, 43 Wis., 113; *Palmer v. Ins. Co.*, 44 Wis., 206.

There was a clause in the policy to the effect that, in case there should be any change in the risk, either within itself or by neighboring buildings, at the time of the renewal, the renewal should be void; also that, whenever the policy should become void for any cause, it should not be revived or reinstated by the issue of any renewal receipt, or in any other way except by special contract for such reinstating in writing thereon, or by the issuing of a new policy. But it was competent for the agent, acting in behalf of the defendant, to waive these as well as other conditions of the policy. Certainly the company, after having pretended to renew the policy, especially after having received the premium, could not say that no contract of insurance had been made which was binding upon it. It would be estopped from making any such defense upon the clearest principles of law and morals.

There is a still further clause which requires a word of comment. It is the one which provides that the policy shall be avoided on " the issue or levy of an execution, without actual possession, against any kind of property hereby insured." It appears that there was an execution issued on the Sweet judgment, which was returned on the 23d of September, 1879, satisfied in part. On the same day an *alias* execution was issued, which was returned a few days after the fire, satisfied as to $100. The jury found that the defendant had knowledge, at the date of the renewal of the policy, of the issuing of an execution on this judgment. It is objected that there was no evidence whatever to sustain that finding; and for the purposes of the case we assume that there was none. But still we think the clause in question was not intended to apply to real estate. The language would seem to repel such an application. It refers to an issue or levy of an execution " *without actual possession*," which clearly implies that the execution

VOL. LIII — 24

was against property where actual possession might be taken by the officer under the writ. Properly speaking, there is no actual possession of real estate taken by the officer on levy of an execution upon it. The possession remains in the judgment debtor until the deed is given. In the words of REYNOLDS, C., in *Colt v. Phœnix Fire Ins. Co.,* 54 N. Y., 595–8, where a similar clause was considered, " the levy of an execution upon real estate under an ordinary judgment is at this day unnecessary, and in fact never is done, and it may be said is now unknown to the law." In that case the court decided that the clause did not apply to real estate, but to the levy of an execution upon personal property only, where the actual levy by the sheriff divests the personal property of the debtor, to a large extent at least, and the sheriff takes and retains possession until sale. We think that must be the construction of the clause in question, though it must be confessed it is very difficult to give it any intelligent interpretation. It will be noticed that it first provides that an issue of an execution against the insured property shall avoid the policy; then, in the disjunctive, that a " levy," etc., shall have the same effect. Now, if the issue of an execution terminated the policy, what earthly object could there be in providing that a levy of an execution should do so? It is evident that in no case could there be a levy until after the execution was issued. The latter act put·an end to the policy without levy. The whole condition is so framed or expressed that it is impossible to tell to what some of the clauses relate. The policy is avoided if the insured property " be sold or transferred," or " upon the commencement of foreclosure proceedings against," or " *a sale under a deed of.*" What do the words " sale under a deed of " mean in this connection? Do they refer to a sale under a deed of trust, or what do they mean? Where the condition is relied on as working a forfeiture on its breach, we say, in the language of Mr. Wood, " it is the duty of the insurer to clothe the contract in language so plain and clear that the in-

sured cannot be mistaken or misled as to the burdens or duties thereby imposed upon him. Having the power to impose conditions, and being the party who draws the contract, he must see to it that all conditions are plain, easily understood, and free from ambiguity." Wood on Ins., § 59. Some of the clauses in the condition in question are framed in such an awkward and unintelligible manner that it is difficult to tell what they mean. There is no excuse or justification for framing conditions in this way, and the practice ought not to be tolerated.

The judgment in the record is dated December 29, 1880, which was before the motion for a new trial was decided. The judgment is marked as filed March 10, 1881, which was doubtless the day the judgment was entered of record. Interest was given on the verdict to March 10, 1881. Now, it is said the plaintiffs may claim and attempt to collect interest from the date of the judgment, and thus obtain double interest for two months and eleven days. But, if the plaintiffs should attempt to do this, it would be in the power of the circuit court, on motion, to correct the error. We cannot assume, as the record stands, that the plaintiffs will claim any excess of interest.

The judgment of the circuit court, we think, is right, and must be affirmed.

*By the Court.*— Judgment affirmed.