KIRCHER, Respondent, vs. THE MILWAUKEE MECHANICS' MUT-
UAL INSURANCE COMPANY, Appellant.

*September 24 — October 15, 1889.*

*Insurance against fire: Use of building: Increase of risk: Court and
jury: Expert testimony: Value of building wholly destroyed: Im-
material error: Witnesses: Comments of counsel.*

1. A policy of insurance upon "a dwelling-house, to be occupied by
tenants," provided that it should be wholly void if the premises
should at any time be occupied or used, in whole or in part, for
any purpose, whether manufacturing or otherwise, different from
that set forth in the application or policy, or if the risk should be
increased by means within the control of the assured. The tenants
used the second story of the house for shaving hoops for a period
of one week, but such use ceased three days before the fire, and
the jury found that it did not materially increase the risk. *Held*,
that there was no substantial breach of the condition.

2. The question whether such use materially increased the risk was
one of fact for the jury, and they were not concluded on that point
by the testimony of experts.

3. The fact that the plaintiff in an action upon a policy of insurance
was allowed to testify as to the value of the building destroyed,
although (under sec. 1943, R. S.) such evidence was immaterial, is
not such an error as will work a reversal.

4. It is not error to allow counsel to comment upon the fact that per-
sons who, according to a witness, were with him when the events
as to which he testified occurred, were not also called as witnesses.

APPEAL from the Circuit Court for *Calumet* County.

The following statement of the case was prepared by Mr.
Justice CASSODAY:

This action is to recover damages by reason of loss by
fire of a two-story frame dwelling-house, January 10, 1886,
upon a policy of insurance issued to the plaintiff by the de-
fendant on or about October 1, 1884, containing the follow-
ing provisions: "It is also agreed by and between the as-
sured and the company that this policy shall be wholly void
under any one or more of the following conditions, to wit:

. . . (6) If the premises shall at any time be occupied or used, in whole or in part, for any purpose, whether manufacturing or otherwise, different from that set forth in the application or written in this policy, without the consent of this company indorsed hereon. . . . (8) If the risk shall be increased by means within the control of the assured, without consent thereto indorsed hereon." The answer consisted of denials and an alleged forfeiture of the policy by reason of mis-occupation and misuse of said dwelling-house or some part thereof.

At the close of the trial the jury returned a special verdict to the effect that the plaintiff's tenants used the second story of said building in shaving hoops for a period of one week previous to the fire, but that such use ceased on Thursday night before the fire, and that such use did not materially increase the hazard and risk; that plaintiff paid or caused to be paid to the defendant's agent for the defendant the sum of $11.75 as and for the premium for said insurance, and for the survey and application therefor. Upon motion of the plaintiff judgment was thereupon rendered in his favor upon such special verdict. From that judgment the defendant appeals.

For the appellant there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *E. P. Vilas*.

*J. E. McMullen*, for the respondent.

CASSODAY, J. The mere fact that the plaintiff was allowed to testify to the value of the building was not such an error as should work a reversal. True, it was immaterial upon any of the issues submitted, but it affected no substantial right of the defendant, and hence is not ground for reversal. Sec. 2829, R. S. The same is true respecting the answer of the witness Dick as to his seeing Noah Welch and others outside of the house on Friday before the fire, with hatchets and axes, and saying that they were going

into the woods to cut poles. So far as the statement tended to prove anything it was favorable to the defense, since it might be inferred therefrom that Welch intended to continue the use of a portion of the building in shaving hoops.

The question whether such use of the second story of the building materially increased the hazard and risk was one of fact for the jury. It was fairly submitted to them. There appears to be evidence sufficient to sustain their findings. We are unwilling to hold that the jury were concluded upon that point by the testimony of "men skilled in the business of insurance." In fact the question presented involved no such special skill or knowledge as to render the "opinion" of such alleged experts admissible. *Veerhusen v. C. & N. W. R. Co.* 53 Wis. 689; *Joyce v. Maine Ins. Co.* 45 Me. 168, 71 Am. Dec. 536; Lawson, Exp. Ev. 203.

There was no error in allowing counsel to comment upon the fact that two persons who, according to one of the defendant's witnesses, went into the room with him where the hoop-poles were being shaved, had not been called as witnesses. *Baker v. State*, 69 Wis. 41.

The only question presented by the record requiring serious consideration is whether the use of the second story of the building in shaving hoops by the plaintiff's tenants, as found by the jury, was such as to work a forfeiture of the policy. Such use continued for one week, and terminated three days before the fire. Such use did not materially increase the hazard and risk, and in no way contributed to the injury. In the portion of the policy quoted in the statement of facts it was, in effect, agreed that if the premises should at any time be occupied or used, in whole or in part, for any purpose, whether manufacturing or otherwise, different from that set forth in the application or written in the policy, without the consent of the company indorsed thereon, the same should wholly avoid the policy. In the contract of insurance, the building is, in effect, described

AUGUST TERM, 1889. 473 .

Kircher vs. The Milwaukee Mechanics' Mutual Ins. Co.

as "a dwelling-house, to be occupied by tenants for three years;" and it appears that at the time of making the contract it was in fact occupied by three different families as tenants. Beyond question the clause of the policy referred to was a continuing warranty that such occupation or use of the building as a dwelling-house, in whole or in part, should not be "for any purpose, whether manufacturing or otherwise, different from that set forth" in such contract of insurance. *Blumer v. Phœnix Ins. Co.* 45 Wis. 622; *S. C.* 48 Wis. 535, 33 Am. Rep. 830; *Wakefield v. Orient Ins. Co.* 50 Wis. 532; *Copp v. German Am. Ins. Co.* 51 Wis. 637; *Fitzgerald v. Connecticut F. Ins. Co.* 64 Wis. 463; *Bonneville v. Western Ass. Co.* 68 Wis. 298; *Hankins v. Rockford Ins. Co.* 70 Wis. 1. This being so, a substantial breach of such warranty would avoid the policy, even where the transaction constituting such breach in no way contributes to such loss. But to prevent such forfeiture the court is bound to construe such contract "as strongly against the insurer, and as favorably for the insured, as its terms will reasonably permit." *Ibid.; Wakefield v. Orient Ins. Co.* 50 Wis. 532. Hence the rule is pretty well settled that in order to work such forfeiture a substantial breach must be established. *Troy F. Ins. Co. v. Carpenter,* 4 Wis. 29; *Wakefield v. Orient Ins. Co. supra; Copp v. German Am. Ins. Co.* 51 Wis. 637; *Billings v. Tolland Co. M. F. Ins. Co.* 20 Conn. 139; *Loud v. Citizens' Mut. Ins. Co.* 2 Gray, 221; *Hall v. People's Mut. F. Ins. Co.* 6 Gray, 185; *Farmers' & M. Ins. Co. v. Simmons,* 30 Pa. St. 299; *Martin v. State Ins. Co.* 44 N. J. Law, 485; *Williams v. New England M. F. Ins. Co.* 31 Me. 219; *Westchester F. Ins. Co. v. Foster,* 90 Ill. 121.

The question recurs whether the misuse here complained of constituted such substantial breach. It will be observed that the building at no time ceased to be occupied by the three tenants named, nor at any time ceased to be used by

them respectively as a dwelling-house. It would be difficult to prescribe any fixed limitations to the ordinary use, alike applicable to all sorts of dwelling-houses wheresoever located and by whomsoever occupied. In some portions of the same city the ordinary use would be very much different than in other portions; and even in the same portion of a city the ordinary use by some persons may be very different than by other persons. The difference is perhaps still greater in distant portions of the country, depending upon the business and character of the occupant, and whether he is located in a well-established community or on the border, or in a lumbering, mining, or farming district. In contracting for insurance upon a dwelling-house such diversity in the ordinary use must be regarded as in the contemplation of the parties. In view of the authorities cited, and many others which might be cited, we must hold that the incidental use by the tenants of the second story of the building in shaving hoops for the period mentioned was not a substantial breach of the conditions of the policy; especially where, as here, such use in no way contributed to the loss and did not materially increase the hazard and risk.

We find no material error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.