WEIDNER, Appellant, vs. STANDARD LIFE AND ACCIDENT INSURANCE COMPANY OF DETROIT, MICHIGAN, Respondent.

*October 11—December 4, 1906.*

*Accord and satisfaction: Part payment of an admitted debt: Consideration: Evidence: Accident insurance: Liability: Questions for jury: Robbery.*

1. The part payment of an admitted debt is no consideration for an agreement not to enforce the collection of the balance of the debt.
2. In an action on an insurance policy the answer admitted that a certain sum was due plaintiff under a clause in the policy, de-

Weidner v. Standard Life and Accident Ins. Co. 130 Wis. 10.

nied other liability, and pleaded the payment of the admitted sum as an accord and satisfaction. *Held*, that the payment of what the defendant admitted to be due and payable was not a consideration for the alleged settlement of the claim controverted by the defendant.

3. In an action upon an insurance policy (insuring against loss of time resulting from bodily injury caused by external, violent, or accidental means which disabled the insured, but limiting the loss to one tenth of the amount otherwise payable in event of death due to injuries intentionally inflicted upon the insured by any other person, except assault committed for the sole purpose of burglary or robbery) it appeared, among other things, that the insured received a cruel and intentional blow from a third person, after such third person had taken from the possession and against the will of the insured certain personal property belonging to the insured, and that the insured's death was the result of such blow. *Held*, that the question whether the acts of the third person were for the sole purpose of robbery was one of fact for the jury. SIEBECKER and KERWIN, JJ., dissent.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Reversed.*

This is an action to recover $2,700, the balance alleged to be due upon an accident policy of insurance issued by the defendant upon the life of the plaintiff's husband, Gustav A. Weidner, September 17, 1902,

"against loss of time resulting from bodily injuries caused solely, during the term of this insurance, by external, violent, and accidental means, which shall, independently of all other causes, immediately and continuously disable the insured, as follows: . . . (5) If death results solely from such injuries as the proximate cause thereof within ninety days, the said company will pay the principal sum of three thousand dollars to *Emma Weidner,* his wife, if living. . . . (10) In event of death, loss of limb or sight, or disability due to injuries intentionally inflicted upon the insured by any other person (except assaults committed for the sole purposes of burglary or robbery), whether such other person be sane or insane or under the influence of intoxicants or not; or due to injuries received while fighting or in a riot; or due to injuries intentionally inflicted upon the insured by himself or received by him while insane; or inflicted by the in-

sured on himself while insane; or due to the taking of poison, voluntarily or involuntarily, consciously or unconsciously; or the inhaling of any gas or vapor; or due to injuries received while under the influence of intoxicants or narcotics, or due to an unexpected and accidental result of surgical operation or treatment, then in all such cases referred to in this paragraph, the limit of this company's liability shall be one tenth the amount otherwise payable under this policy, anything in the contrary in this policy notwithstanding."

Such policy was renewed from time to time, the last renewal being made and the last renewal receipt given May 20, 1903.

It is conceded that such policy was in force June 28, 1903. It is alleged in the complaint, in effect, that June 28, 1903, the said Gustav A. Weidner received bodily injuries caused solely by external, violent, and accidental means, which were the proximate cause of his death July 10, 1903; that on the afternoon of June 28, 1903, the said Gustav A. Weidner was riding in a wagon, in company with the plaintiff and several other persons, quietly and peaceably, upon the highway, returning from the village of Hales Corners toward the city of Milwaukee, and that two men, then unknown to the said Gustav A. Weidner or to the plaintiff, approached the said wagon, and that one of them suddenly and violently, and against the will of the said Gustav A. Weidner, seized a pair of rubber boots belonging to him, and then and there in his possession, for the purpose of robbery, as the plaintiff verily believes; that the said Gustav A. Weidner thereupon immediately sprang from the wagon and demanded the return of said boots, and that the man having the boots in his hand thereupon struck the said Gustav A. Weidner, and knocked him down, and beat him upon the head and face with one of the said boots, inflicting injuries upon the face and head of the said Gustav A. Weidner from which he died July 10, 1903; that said injuries left visible marks upon the head and face and body of the said Gustav A. Weidner, and were the sole

and proximate cause of his death; that the plaintiff demanded of the defendant, at the time of the proofs of death as aforesaid, payment of said sum of $3,000 under the policy, but that the defendant refused to pay said sum, or any sum except $300 paid July 30, 1903; and that there is now due and payable to the plaintiff by the defendant upon said policy the sum of $2,700, with interest thereon from July 10, 1903.

The defendant answered, by way of admissions, denials, and counter allegations, to the effect that such injuries were not the result of any assault committed for the sole purpose of burglary or robbery, and that under the tenth clause of the policy above set forth the plaintiff was only entitled to one-tenth of the amount otherwise payable under the policy, and that the defendant had accordingly paid to the plaintiff on said claim $300 on July 30, 1903. As a second and separate defense the answer alleges that, in pursuance of an agreement between the plaintiff and the defendant, the plaintiff accepted and received said $300 in consideration and discharge of the plaintiff's claim and the surrender of said policy of insurance for cancellation.

At the close of the testimony on the part of the plaintiff the defendant moved for a nonsuit, which the court denied, and reserved its final decision until all the evidence was in. After the evidence on the part of the defendant was closed, and rebutting evidence on the part of the plaintiff, the court granted the defendant's motion for a nonsuit. From the judgment entered thereon the plaintiff appeals.

The evidence on the part of the plaintiff tended to prove: That the plaintiff and her husband and the plaintiff's parents and three friends, Mr. and Mrs. Wottashek and Mrs. Denzin, had spent the morning of June 28, 1903 (being Sunday), at Hales Corners. Mr. Wottashek had a piece of swamp land and wanted to cut the grass. The plaintiff's husband had accordingly taken his rubber boots along. In the afternoon they started to drive home to Milwaukee in an

express wagon belonging to Wottashek, who drove the team, and with him on the front seat sat the plaintiff's father and her husband, the latter sitting on the left. In the next seat sat the plaintiff, her mother, and Mrs. Wottashek, and in the box of the wagon sat Mrs. Denzin. On the floor of the wagon box lay the rubber boots belonging to the plaintiff's husband. As they approached the tollgate they passed two men, one of whom asked for a ride and showed a blue ticket. Wottashek drove on, as there were seven then riding in the wagon. Then one of the men, whose name was afterwards found to be Tinger, demanded his ticket back. The ticket had then been returned by Mrs. Denzin to the other man, who said to Tinger: "Come on! come on! I got the ticket." Tinger then took the rubber boots belonging to the plaintiff's husband out of the wagon and started off. Mr. Wottashek then stopped the horse, and the plaintiff's husband got off on the left side and walked around the wagon toward Tinger, and said to him: "See here! those are my boots, and I want them back;" and he had hardly said so when Tinger struck the plaintiff's husband on the chest with his fist. The plaintiff's husband fell down from that blow, and while he was lying on the ground Tinger hit him in the face with the heel of the rubber boot, breaking his glasses and his nose, and thereupon Mr. Wottashek had a tussle with Tinger. The plaintiff's husband did not strike Tinger at all. Infection set in, and the plaintiff's husband died twelve days later from septic poisoning following the injury and originating at the wound. Immediately after taking Weidner's boots and upon his request to give them back, Tinger, while retaining possession of the boots, committed the fatal assault, for which he was subsequently convicted of manslaughter. Tinger's purpose in committing the assault can be judged only from his actions.

H. L. Kellogg, attorney, and Joseph B. Doe, of counsel, for the appellant.

For the respondent there was a brief by *Roemer & Aarons,* and oral argument by *J. H. Roemer.*

CASSODAY, C. J. 1. The trial court granted the nonsuit, in part upon the ground that the plaintiff received the $300 mentioned in the complaint with the advice and consent of her friend and agent and with knowledge of what was being settled and the effect of the settlement, so that, if the defendant was liable for more than the $300, yet that settlement was based upon a sufficient consideration and disposed of any further liability under the policy. In other words, the court held and counsel contend that the payment to the plaintiff of $300, for which she gave to the defendant a receipt "in full settlement of claim under policy," was a complete accord and satisfaction. The answer admits that the $300 was due to the plaintiff under the tenth clause of the policy, and pleads the same as an accord and satisfaction. The difficulty with such contention is that it seeks to make the payment of what the defendant thus admitted to be due and payable a consideration for the alleged settlement of the claim controverted by the defendant. It is well settled in this and other states that part payment of an admitted debt is no consideration for an agreement not to enforce the collection of the balance of such debt. *Otto v. Klauber,* 23 Wis. 471; *Lathrop v. Knapp,* 27 Wis. 214, 225; *Lerdall v. Charter Oak L. Ins. Co.* 51 Wis. 426, 429, 8 N. W. 280, and cases there cited; *Continental Nat. Bank v. McGeoch,* 92 Wis. 286, 310, 66 N. W. 606; *Herman v. Schlesinger,* 114 Wis. 382, 400, 90 N. W. 460; *Prairie Grove C. Mfg. Co. v. Luder,* 115 Wis. 20, 89 N. W. 138, 90 N. W. 1085. We must hold that the defense alleged of an accord and satisfaction has not been established; certainly not by the uncontradicted evidence, as held by the trial court.

2. But the trial court also reached the conclusion that under the evidence it was clear that "a dispute and a contro-

versy had arisen between these parties upon the road, and that the *sole purpose* of that assault was not robbery." In reaching such conclusion the trial judge made this statement:

"In my opinion this raises a *pretty close question.* I think I must grant this motion. The evidence conclusively shows,. I think, that the assault upon the insured was not for the sole *purpose* of robbery."

The circumstances under which the boots were taken by Tinger, and the blows he inflicted upon the insured when he demanded the boots, sufficiently appear in the summary of evidence contained in the foregoing statement. It is undisputed that the boots belonged to the insured and were at the time lying on the floor of the wagon occupied by him and others. There is no pretense that Tinger had any right to or interest in the boots, and no excuse is suggested for his taking them from the wagon. The taking of the boots from the possession of the insured was without consent and obviously wrongful. They were so taken in the presence of the insured, and Tinger remained with the boots in the presence of the insured up to the time of striking the fatal blow. The provisions of the policy here applicable are set forth in the foregoing statement. The question recurs whether the assault so committed by Tinger was "for the sole purpose of . . . robbery," within the meaning of the policy. As claimed by counsel for the defendant, robbery is usually defined as the felonious taking and carrying away of the personal property of another, from his person *or in his presence,* by violence or by putting him in fear; citing numerous text-writers, including 24 Am. & Eng. Ency. of Law (2d ed.) 991. The same counsel cites Bishop, where it is said:

"Robbery is a violent larceny from the person (or from the immediate presence, which is termed in law the person) of one usually, not always, assaulted; or, in more apt legal phrase, it is larceny committed by violence from the person of one put in fear." 1 Bishop, New Crim. Law, § 553.

In other words, it is a species of larceny which is aggravated by violence inflicted on the person of the one rightfully in possession of the property, or the putting him in fear of injury. 24 Am. & Eng. Ency. of Law (2d ed.) 994; *Crews v. State,* 3 Cold. 350. Robbery being a higher crime than larceny, it is necessary in the administration of criminal law to differentiate the one from the other. And so it is claimed that the violence or putting in fear must precede or accompany the taking, and not be employed merely as a means of escape or to prevent a recaption of the property. Certainly there are adjudications to that effect.

But what is meant by such taking through violence or fear? The adjudications on the subject are not in harmony, even in criminal cases. It is said by a recent text-writer of ability that "the force necessary" to constitute robbery may "be either actual or, in a sense, constructive. Thus, robbery may be accomplished, in most jurisdictions, by threats or putting the person robbed in fear and overcoming his will." It is "the felonious taking of personal property from the person *or in the presence* of another, against his will, by means of force or fear." 4 Elliott, Ev. § 3129. See *Shinn v. State,* 64 Ind. 13, 17. In Ohio it has been held:

"Where one, without threats or putting in fear, wrests from the possession of another anything of value, and immediately thereafter, for the purpose of retaining the possession of the property on making his escape, violently strikes the other, such violence is concomitant with the taking, and constitutes robbery." *Sherman v. State,* 4 Ohio Cir. Ct. 531.

In the supreme court of that state it has been held that "it is not necessary to show that the property taken was actually severed from" the person of the prosecuting witness, but that "it is enough if the property was in his presence and under his immediate control, and, he laboring under such fear, the property was taken by the accused with intent to steal or rob." *Turner v. State,* 1 Ohio St. 422. To the same effect,

*Hill v. State,* 42 Neb. 503, 60 N. W. 916. In New York the captain of a schooner at anchor heard a noise on deck at midnight, and thereupon went above through the cabin, and found the accused, who pointed a pistol at him and ordered him to go below or he would blow his brains out. The captain then struck him and knocked him overboard, and, after stoning the captain, two other men, who were with the accused, jumped into a boat and rowed away. After they had departed the captain found that certain articles had been taken from the boat; and it was held that the evidence was sufficient to sustain a conviction for robbery. *People v. Glynn,* 54 Hun, 332, 7 N. Y. Supp. 555, affirmed 123 N. Y. 631, 25 N. E. 953. In Mississippi it has been held:

"To constitute robbery it is not necessary that the person robbed must have been first in fear of his person or property. If the goods be taken either by violence or by putting the owner in fear, it is sufficient to render the felonious taking a robbery." *McDaniel v. State,* 8 Sm. & M. 401, 402.

Thus it appears that the question whether there has been a felonious taking of property from the person or in the presence of the owner by violence or putting him in fear, actual or constructive, has not always been regarded by courts as free from ambiguity, even in criminal cases. This is a civil action based upon an express contract; and the question presented is whether the trial court properly held, as a matter of law, that Tinger did not strike the insured for the sole purpose of robbery. Of course, in construing such contracts, the ordinary meaning of the words employed must be enforced. *De Rothschild v. Royal Mail S. P. Co.* 7 Exch. 734, 742; *Behling v. N. W. Nat. L. Ins. Co.* 117 Wis. 24, 93 N. W. 800. When the intent of an insurance contract is doubtful, this court has held that the "conditions providing for forfeitures are to be construed strictly against those for whose benefit they were inserted." *Morse v. Buffalo F. &*

*M. Ins. Co.* 30 Wis. 534. In a later case it was said by RYAN, C. J.:

"Forfeitures are not encouraged in the law. When forfeitures of insurance policies rest on substantial grounds, going to the risk, this court will uphold them. But when forfeitures are alleged on purely technical grounds, not going to the risk, the rule is universal that the contract of insurance is to be upheld, if it can be without violation of any principle of law." *Appleton I. Co. v. British Am. A. Co.* 46 Wis. 23, 32, 1 N. W. 9, 50 N. W. 1100.

In *Shafer v. Phœnix Ins. Co.* 53 Wis. 361, 10 N. W. 381, it was held that "conditions inserted in a policy by the insurer, to work a forfeiture, should be plain, easily understood, and free from ambiguity." So it has been held that the question whether the stipulation in the policy as to the use of the property "materially increased the risk was one of fact for the jury." *Kircher v. Milwaukee Mech. Mut. Ins. Co.* 74 Wis. 470, 43 N. W. 487. Such liberal rules of construing an insurance policy were applied in a case where the insured was accidentally shot in the back, producing immediate and total paralysis of the lower part of the body and entirely destroying the use of both feet. *Sheanon v. Pac. Mut. L. Ins. Co.* 77 Wis. 618, 46 N. W. 799; *S. C.* 83 Wis. 507, 53 N. W. 878. To the same effect, *Lord v. Am. Mut. Acc. Asso.* 89 Wis. 19, 61 N. W. 293. So it has been held by this court in relation to contracts generally:

"When the terms of a contract are indefinite, uncertain, and susceptible of two constructions, and by giving them one construction one of the parties would be subjected to a forfeiture, and by giving them the other no such forfeiture would be incurred and no injustice would be done to the other party, the contract should be so construed as not to create the forfeiture." *Jacobs v. Spalding,* 71 Wis. 177, 190, 36 N. W. 608.

In the case at bar it is quite obvious that Tinger intended to take the boots by force from the possession and against the

20        SUPREME COURT OF WISCONSIN.    [Dec.

.Weidner v. Standard Life and Accident Ins. Co. 130 Wis. 10.

will of the insured. The blow inflicted upon the insured was cruel and intentional. The purpose of Tinger was the question for determination. After careful consideration we are constrained to hold that the question whether it was committed for the sole purpose of robbery was one of fact for the jury.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

The following opinion was filed December 18, 1906:

SIEBECKER, J. (*dissenting*). The contract insures against loss of time resulting from bodily injury caused by external, violent, or accidental means which shall disable the insured, but limits the loss to one tenth of the amount otherwise payable "in event of death . . . due to injuries intentionally inflicted upon the insured by any other person (except assaults committed for the sole purpose of burglary or robbery)." The court holds that the word "robbery" was used in the contract, not in its strictly legal sense, but in a different and popular sense, and as being a felonious taking from the presence of the owner against his will.

In arriving at the intention of the parties, insurance contracts are to be construed as are contracts pertaining to other subjects. When words employed in such contracts have a definite meaning and it is obvious that they were so used by the parties, then there is no room for interpretation, and the terms of such contracts are to be applied in the policies in the sense intended by the parties. It is only in cases of doubtful meaning of terms that courts have construed them against the insurer. As stated in *Travellers' Ins. Co. v. McConkey,* 127 U. S. 661, 8 Sup. Ct. 1360:

"Such being the contract, the court must give effect to the provisions according to the fair meaning of the words used, leaning, however, where the words do not clearly indicate the

intention of the parties, to that interpretation which is most favorable to the insured"—citing cases.  See, also, 1 Cooley, Briefs Ins. Law, 627 *et seq.*

The language limiting loss to one tenth of the amount otherwise payable, when the injuries were inflicted intentionally by another person, is certainly clear and definite and free from doubt, and includes every injury intentionally inflicted.  From this limitation the parties except injuries inflicted by another committing an assault upon the insured *"for the sole purpose of burglary or robbery."*  Obviously, this language can mean but one thing, namely, the infliction of injury by another in the commission of the crimes of burglary or robbery.  This is the natural import of the terms and language of the contract, and they suggest no doubt or ambiguity as to the intention of the parties.  If the parties had intended to include in this exception an injury which was intentionally inflicted by another engaged in thievery, they would naturally have expressly so stated it in the exception.  I am of opinion that there is no ambiguity in the use of the terms "burglary" and "robbery" employed to express the exception, and the context clearly indicates that the parties used them in their definite legal sense.  *Germania F. Ins. Co. v. Deckard,* 3 Ind. App. 361, 28 N. E. 868; *Lycoming F. Ins. Co. v. Schwenk,* 95 Pa. St. 89; *Gauch v. St. Louis Mut. L. Ins. Co.* 88 Ill. 251; *Dupin v. Mut. Ins. Co.* 5 La. Ann. 482; *Travellers' Ins. Co. v. McConkey, supra.*

From an examination of the evidence it appears that the injuries which resulted in the assured's death were not inflicted in an assault by another committed for the sole purpose of committing a robbery.  To constitute such an offense, the taking and obtaining possession of the property must be accomplished through violence or fear, which must precede or be concomitant with the act of taking.  If the violence follows the taking, either because the owner attempts to regain possession of the property taken or for any other reason, then

it is not robbery. It seems to me there is no confusion or uncertainty in the decisions on this point. 2 East, Pl. Cr. 707 *et seq.;* 2 Archbold, Crim. Pr. & Pl. 1289; 2 Chitty, Crim. Law, 801, 804; 1 Hale, Pl. Cr. 531 *et seq.; Thomas v. State,* 91 Ala. 34, 9 South. 81; 1 Whart. Crim. Law (10th ed.) § 850; 24 Am. & Eng. Ency. of Law (2d ed.) 996.

In my opinion the trial court held correctly in dismissing the complaint.

KERWIN, J. I concur in the foregoing opinion of Mr. Justice SIEBECKER.