# JULIA FORSCHNER TUPPER v. MASSACHUSETTS BONDING AND INSURANCE COMPANY.[1]

June 8, 1923.

No. 23,399.

**Definition of cyclone correct.**

1. By the terms of a policy of accident insurance, double indemnity was to be paid if the death of the insured was caused by a cyclone. An action to recover such indemnity was brought. In the instructions to the jury, the court defined a cyclone as "A violent storm, often of vast extent, characterized by high winds rotating about a calm center of low atmospheric pressure. Popularly * * * any violent and destructive windstorm." The definition was correct and the evidence justified the jury in finding that the storm in which the insured lost his life was a cyclone.

**Use of words "cyclone or tornado" in insurance policy.**

2. The words "cyclone or tornado", as used in the policy, did not refer to storms of the same nature. A doubt with respect to the sense in which they were used should be resolved against the insurer, although the words occur in a provision for the payment of double indemnity.

**Consideration for release—accord and satisfaction.**

3. There is no consideration for a release unless something of value was received to which the person executing it was not entitled as a matter of right. The mere retention of money due unconditionally does not constitute an accord and satisfaction. Quaere: Is a different rule applicable where a claim is unliquidated?

**Payment of liquidated claim not a bar to action for unpaid portions.**

4. The payment of a known liquidated claim, neither party being aware of the existence of a right of action for a greater amount, and the execution of an unconditional release, is not a bar to a subsequent action for the unpaid portion of the claim.

[1]Reported in 194 N. W. 99.

Action in the district court for St. Louis county to recover $2,200 upon an accident insurance policy. The case was tried before Magney, J., who at the close of the testimony denied defendant's motion to dismiss the action and its motion for a directed verdict, and a jury which returned a verdict for $2,400.97. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Baldwin, Baldwin, Holmes & Mayall,* for appellant.

*Andrew Nelson* and *John Cedergren,* for respondent.

LEES, C.

John L. Forschner, an engineer on the lake steamer John Owen, lost his life when the steamer went down in Lake Superior in a violent storm on November 12, 1919. He carried a policy of accident insurance issued by defendant on May 13, 1918, and made payable to his sister, the plaintiff in this action. By its terms, she was entitled to receive $2,000 if he sustained bodily injuries through accidental means which directly and independently of all other causes resulted in his death, and double that amount if such injuries were caused by a cyclone or tornado and death resulted therefrom. Each consecutive year's renewal of the policy, if the premium was annually paid in advance, increased the indemnity by 10 per cent. The premium for 1919 was paid in advance and both parties concede that plaintiff was entitled to receive $2,200, but no more unless her brother lost his life in a cyclone, and, in that event, to double that amount unless defendant was released from liability by reason of the facts hereafter stated.

On November 22, 1919, plaintiff wrote defendant's manager, informing him that the steamer John Owen had gone down with all on board and inquiring what steps she should take to comply with the requirements of the policy. In response, blank proofs of loss were mailed to her and she filled them out and sent them to defendant. December 18, 1919, the superintendent of defendant's claim department drew a draft on defendant for $2,200, payable to plaintiff, mailed it to her and asked her, when she cashed it, to attach the policy. Printed on the back of the draft was a release of all claims

plaintiff might have under the policy. She signed the release, delivered the draft and the policy to a bank and was paid $2,200. May 23, 1921, she wrote defendant, saying she had been told she should have been paid double indemnity and asked what defendant was disposed to do. Some correspondence followed, defendant finally refusing to pay anything more. This action was then brought to recover $2,200 in addition to what had already been paid, on the theory that the insured lost his life in a cyclone or tornado.

The answer was: (1) A denial that death was caused by a cyclone or tornado; and (2) an allegation that by accepting the draft, signing the release, and surrendering the policy, plaintiff absolved defendant from any further liability. The reply to the second defense was that the release was executed by mistake in that neither party knew that the death of the insured was caused by a cyclone or tornado. The case was tried by a jury. Defendant introduced no evidence and moved for a directed verdict. The motion was denied. The court instructed the jury to return a verdict in plaintiff's favor for $2,200 if they found that the death of the insured was caused by a cyclone. Whether it was so caused was the only question submitted. The jury found for the plaintiff and defendant has appealed from an order denying its motion in the alternative for judgment or a new trial.

1. In charging the jury, the court defined a cyclone as follows:

"A cyclone is a violent storm, often of vast extent, characterized by high winds rotating about a calm center of low atmospheric pressure. This center moves onward, often with a velocity of as much as twenty or thirty miles an hour. Popularly, a cyclone is any violent and destructive windstorm, and in the United States a tornado is often popularly called a cyclone."

The storm of November 12, 1919, was described by the masters of four vessels on Lake Superior, one of whom saw the John Owen between 2 and 3 o'clock in the afternoon of that day apparently running for shelter. The storm was then at its height, the velocity of the wind being variously estimated at 60, 75 and 80 miles an hour, and the height of the waves at 20 or 30 feet. It was shown that the

barometer began to fall rapidly at 10 o'clock in the morning; that the wind suddenly shifted from the northeast to the west, became violent, and veered about from point to point of the compass, blowing generally from the west, and that at intervals there were heavy squalls of snow.

Mr. Richardson, meteorologist in charge of the United States Weather Bureau office at Duluth for 23 years, produced his official records and charts showing weather conditions in the Lake Superior region, and testified that at 7 a. m. on November 12, 1919, there was an area of low barometric pressure centered near Escanaba, Michigan, and moving northeast towards Hudson Bay in advance of a high pressure area. His opinion was that the storm was a cyclone. The nature and character of the storm had to be determined from a consideration of the evidence. The conclusion to be drawn was one of fact. The question was not one of construction of the policy, and hence it was properly submitted to the jury.

It is urged that the words "a cyclone or tornado" as used in the double indemnity clause are interchangeable and refer to storms of the same nature, and that, if it had not been intended to use them in a synonymous sense, the word "tornado" would have been preceded by the indefinite article "a." We think this unduly emphasizes the importance of a correct grammatical construction of the language of the' policy. The generally accepted meaning of the words "cyclone" and "tornado" is not the same. The words refer to windstorms which have different characteristics, just as the words "hail" and "snow" refer to different forms of congealed water falling from the clouds. The general rule is that the language of an insurance policy is to be given the usual and ordinary meaning it conveys to the popular mind. Defendant contends that the storm was not a cyclone if the popular understanding of the word is to determine its meaning. Possibly the word brings up a picture of a death-sowing, funnel-shaped cloud, rushing over a narrow strip of country, descending to the earth and uprooting trees, unroofing houses and destroying life and property, and then ascending and passing away in the air. Maryland Cas. Co. v. Finch, 147 Fed. 388, 77 C. C. A. 566, 8 L. R. A. (N. S.) 308. But that is a tornado and not

a cyclone according to the definitions found in the dictionaries in common use, from which the court's definition was taken. Moreover, if there is a doubt as to the sense in which the word was used, the doubt must be resolved in plaintiff's favor, 2 Dunnell, Minn. Dig. § 4659, and the fact that the ambiguity, if any, is found in a provision which doubles the insurer's liability in exceptional cases does not forbid the application of this elementary rule of construction. Primrose v. Casualty Co. 232 Pa. 210, 81 Atl. 212, 37 L. R. A. (N. S.) 618. We approve of the court's definition of a cyclone and hold that the jury might properly find that the storm was a cyclone within the meaning of the policy and that the death of the insured was caused by a cyclone.

2. Is plaintiff's claim barred by the release she executed? If an ordinary storm had caused the death of the insured, defendant paid all it owed. If, however, the storm was a cyclone, it should have paid twice as much as plaintiff received. Payment was made on the supposition that the full measure of liability was $2,200. We can only surmise what would have happened if plaintiff had claimed double indemnity, asserting that her brother lost his life in a cyclone. The thought that there might be such a claim was not in the minds of the parties when the settlement was made. The claim now made was not then involved or in dispute. Nothing was involved except an undisputed liquidated demand for $2,200. The rule is well settled that a release is not supported by a sufficient consideration unless something of value was received to which the creditor had no previous right. Ness v. Minnesota & Colorado Co. 87 Minn. 413, 92 N. W. 333; Demeules v. Jewel Tea Co. 103 Minn. 150, 114 N. W. 733, 14 L. R. A. (N. S.) 954, 123 Am. St. 315; Foster County State Bank v. Lammers, 117 Minn. 94, 134 N. W. 501; Edwards v. Svea Fire & Life Ins. Co. 141 Minn. 285, 170 N. W. 206. It is equally well settled that the mere retention of money which the creditor was entitled to receive unconditionally does not constitute an accord and satisfaction. Duluth Chamber of Commerce v. Knowlton, 42 Minn. 229, 44 N. W. 2. These rules are generally applied in cases where there has been a voluntary release of part of a known liquidated claim for no other consideration than the payment of the remainder of the claim.

Whether a different rule should be applied where the claim is unliquidated may be an open question. It was said arguendo, in Marion v. Heimbach, 62 Minn. 214, 64 N. W. 386, that the rule was different in such a case, but apparently that was not the view the court took in Demeules v. Jewel Tea Co. supra. See Whittaker Chain Thread Co. v. Standard Auto Supply Co. 216 Mass. 204, 103 N. E. 695, 51 L. R. A. (N. S.) 315, Ann. Cas. 1915A, 949; 1 R. C. L. 196. See also Prudential Ins. Co. v. Cottingham, 103 Md. 319, 63 Atl. 359; Weidner v. Standard Co. 130 Wis. 10, 110 N. W. 246. In the case at bar the effect of the release, according to defendant's contention, is to discharge a claim of which neither party had any knowledge. No intention to release it could be imputed to plaintiff because she did not know of its existence, and, conversely, defendant did not intend to exact a release of the present claim because it was equally ignorant of its existence. The facts bring the case within the rule expressed in Nygard v. Minneapolis St. Ry. Co. 147 Minn. 109, 179 N. W. 642. The amount paid was merely indemnity for loss of life by accidental drowning under no unusual circumstances. There was no compromise of a disputed claim and no knowledge by either party of the facts which create the liability now asserted. The undisputed facts are such that the release cannot be held to bar plaintiff's right to recover double indemnity under any view of the law which may properly be taken.

Order affirmed.