HICKS PRINTING COMPANY, Respondent, vs. WISCONSIN CENTRAL RAILWAY COMPANY, Appellant.

*February 18—March 30, 1909.*

*Contracts: Construction: Written and printed provisions: Practical construction: Illegality: Railroads: Advertising to be paid for in transportation: Accord and satisfaction.*

1. Written provisions inserted in a printed form of contract are to control if they cannot be reconciled with the printed portions.
2. The practical construction of a contract by the parties acting under it is entitled to much weight.
3. Where a contract is fairly open to two constructions, by one of which it would be lawful, while by the other it would be unlawful and one party would be subjected to a forfeiture, the former construction should be adopted.

4. Plaintiff agreed to publish in its newspaper, during the year 1906, advertising matter (time cards, etc.) as the same might be furnished by the defendant railway company, "to be charged at regular rates to the amount of $400;" and "in full consideration of the above advertising" defendant agreed "to issue in payment $400 worth of transportation." The words first above quoted were written into the printed form of contract furnished by defendant, and had not appeared in previous contracts between the parties. This was the first contract made between them after ch. 362, Laws of 1905, had made it unlawful for a railway company to charge one person or corporation a higher rate than another for transportation and had imposed a forfeiture for so doing. In November, 1906, plaintiff wrote, stating that it had given defendant a great deal more advertising than the contract called for, and asked as a favor that defendant increase the contract to the amount of $50. This request was granted, and a supplementary contract made amending the original contract accordingly. The value of the advertising during the year at regular rates was more than $1,600. *Held:*

　　(1) The advertising done was covered by the express contract.

　　(2) The words written into the form of contract as stated would indicate that plaintiff might charge for advertising done in excess of $400, but the practical construction placed by plaintiff on the contract when he obtained the amendment would indicate the contrary; these two considerations largely neutralizing each other.

　　(3) In that situation, since a construction of the contract which would deprive plaintiff of the right to charge more than $400 would make it unlawful and subject defendant to a forfeiture under the act of 1905, it must be construed as entitling plaintiff to charge the full value of the advertising in excess of what was paid for in transportation.

　　(4) There being no controversy between the parties when the supplemental contract was made in November, 1906, and no settlement then made of any existing dispute, that transaction did not constitute an accord and satisfaction.

[5. Whether advertising could be received in payment for transportation under ch. 362, Laws of 1905, not determined.]

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

The plaintiff publishes a newspaper at Oshkosh, Wisconsin, and the defendant is a railway company. For several years

preceding 1906 the plaintiff did advertising for the defendant, which was paid for in transportation. The advertising in a general way consisted of publishing time cards and such announcements as the railway company desired to make. In December, 1905, the defendant forwarded to the plaintiff written duplicate unsigned contracts for execution intended to cover the year 1906. Certain changes were made therein by plaintiff, and the contracts as changed were delivered to the agent of the defendant and were forwarded to it for signature, and were signed by the defendant as amended, and one of the duplicates was returned to the plaintiff. The 1906 contract as amended was different in one particular, which will be referred to in the opinion, from the prior contracts made between the parties. Apparently, about November, 1906, transportation had been furnished the plaintiff to the amount provided for in the contract. On November 8, 1906, the plaintiff wrote the defendant that it would very much like to increase the contract to the amount of $50. As a result of such request a supplementary contract was then made between the parties, reading as follows:

"The undersigned hereby agree that, on account of additional space required by the *Wisconsin Central Railway Company* for reading notices and display advertisements during the year 1906, the amount of contract appended hereto is hereby amended and increased to provide for the payment by the *Wisconsin Central Railway* to the publisher, whose signature appears below, of transportation to the amount of $50 in addition to amount called for in original contract."

The plaintiff offered proof on the trial tending to show that the advertising done by it for the defendant for the year 1906 at its regular rates of charge amounted to $1,612.90, and the referee and the court found the fact to be in accordance with this testimony. The plaintiff brought suit on *quantum meruit* to recover the alleged balance due it for advertising over and above the amount provided for in the original and supplementary contracts, to wit, the sum of $450. Plaintiff

was awarded judgment in the sum of $1,162.90, together with interest thereon to January 1, 1907. From such judgment. this appeal is taken.

The appellant insists that the court erred (1) in the construction placed upon the original contract; and (2) in failing to find that the supplementary contract constituted an accord and satisfaction of the claim upon which suit is brought.

For the appellant there was a brief by *Walter D. Corrigan, W. A. Hayes,* and *Clifton Williams,* and oral argument by *Mr. Hayes.* To the point that the making of the supplemental contract amounted to. an accord and satisfaction, they cited *Continental Nat. Bank v. McGeoch,* 92 Wis. 286, 312, 314; *Kercheval v. Doty,* 31 Wis. 476, 484, 487; *Sharp v. Mauston,.* 92 Wis. 629, 631; *Wheeler v. Meriden C. Co.* 23 Wis. 584; *Zimmer v. Becker,* 66 Wis. 527, 531; *Woodford v. Marshall,* 72 Wis. 129; *Galusha v. Sherman,* 105 Wis. 263, 268; *Perkins v. Owen,* 123 Wis. 238, 244.

For the respondent the cause was submitted on the brief of *Hume & Oellerich.*

BARNES, J.   The contract involved on this appeal stated in. precise terms that it commenced January 1, 1906, and terminated December 31, 1906. The principal controversy arises over the meaning of the following paragraph in the contract:

"Party of the second part hereby agrees to publish in the aforesaid publication during the life of this contract; advertising in the form of time cards, display, or readers, as may be furnished from time to time, necessary and desirable changes. in said advertisements to be made on the request of and without expense to the party of the first part, and to be charged at. regular rates to the amount of $400. In full consideration of the above advertising, party of the first part agrees to issue in payment $400 worth of transportation. . . ."

The plaintiff contends that the contract covered advertising to be charged for at regular rates to the amount of $400 only,

and that it is entitled to recover on *quantum meruit* for all advertising done during the life of the contract in excess of such amount.    The defendant claims that transportation furnished to the amount of $400 was in full payment of all advertising of the character specified during the term covered by the contract, and that the clause, "to be charged at regular rates to the amount of $400," is a mere designation of the value of the consideration passing from each to the other.    The plaintiff agreed to publish during the life of the contract—that is, from January 1, 1906, to December 31, 1906—advertising matter as the same might be furnished.    This undertaking seems to be absolute, so that the advertising done was covered by the written contract.    The phrase, "to be charged at regular rates to the amount of $400," does not obviate the agreement on the part of the publisher to publish the advertisements furnished during the year 1906.    It does leave the contract ambiguous as to whether the publisher might charge for advertising done in excess of the $400.    But the next sentence in the contract contains the following provision: "In full consideration of the above advertising, party of the first part agrees to issue in payment $400 worth of transportation."    So we have the anomalous situation of the plaintiff agreeing to publish during the year 1906 such "time cards" and "readers" as might be furnished by the railway company, and to receive in payment for such service $400 worth of transportation, coupled with a provision that the advertising matter furnished was to be "charged at regular rates to the amount of $400." There is no claim that any advertising was done during the year that did not fall within the designation of "time cards, display, or readers" mentioned in the contract.

Obviously there is an ambiguity on the face of the contract, because it is not clear from its terms whether the advertising done in excess of $400 is to be paid for by the defendant otherwise than in transportation, or whether the $400 in transportation is intended to cover all advertising done regardless of

its value. Recurring to extraneous matters *dehors* the con-
tract, we are not greatly aided in arriving at a true construc-
tion of the instrument. The parties had been doing business
for several years, but none of their contracts prior to the one
we are considering contained the clause "to be charged at reg-
ular rates to the amount of $400." This clause is meaningless
if the defendant's construction of the document is adopted,
and it is only fair to assume that the parties meant something
when they inserted it in their contract for 1906. The fact of
its insertion strongly tends to support plaintiff's construction.
This view gains additional support from the fact that the
clause we are considering was written into the printed form
of contract furnished by the defendant. It is a canon of con-
struction that where a contract "is written in part and printed
in part, as where it has been filled in upon a printed form,
the parties usually pay much more attention to the written
parts than to the printed parts. Accordingly, if the written
provisions cannot be reconciled with the printed, the written
provisions control." 2 Page, Contracts, § 1119, and cases
cited; *Gilbert v. Stockman,* 76 Wis. 62, 65, 44 N. W. 845.
On the contrary, the practical construction placed on the
agreement by the plaintiff strongly tends to support the con-
tention of the defendant that the parties intended that the
entire compensation of the plaintiff should be limited to $400
in transportation. This is shown by plaintiff's letter of No-
vember 8, 1906, in which it stated that it had given the de-
fendant a great deal more advertising than its contract called
for, and requested as a favor that $50 worth of additional
transportation be given it, as well as by some other circum-
stances of minor importance. The request for the additional
transportation was granted. While either of the facts alluded
to might be persuasive if the other were absent, they largely
neutralize each other and do not afford any very satisfactory
explanation of the ambiguity.

It is a verity in the case that the value of the advertising

done by the plaintiff amounted to over $1,600.    If we adopt
the construction urged upon us by the defendant, then the
contract is clearly unlawful and void and the defendant is
liable to a large penalty for having made and carried it out.
By ch. 362, Laws of 1905, the defendant is required to file
tariffs showing its charges for the transportation of passen-
gers (sec. 4), and it is made unlawful for it to charge, de-
mand, collect, or receive a greater or less compensation for the
carriage of passengers than that specified in the tariffs (sec. 4,
subd. *c*), and in the event of its demanding from any person
or corporation a greater or less compensation for any service
rendered in the transportation of persons than that prescribed
in the published tariffs, or than it charges, collects, or receives
from any other person or corporation for a like and contem-
poraneous service, it is guilty of unjust discrimination, which
is declared to be unlawful, and upon conviction thereof must
forfeit and pay into the state treasury not less than $100 nor
more than $10,000 (sec. 22).    It needs no argument to show
that if the contract under consideration required plaintiff to
pay four times as much for the transportation used by its of-
ficers and servants as the public was called upon to pay gen-
erally, the contract was in plain contravention of the provi-
sions of the law in question.    It is significant that the change
in form was made in the first contract entered into after the
passage of the act referred to.    The construction now con-
tended for by defendant leads it "from the frying pan into
the fire."

If the contract in question were reasonably plain, the results
that might follow from its interpretation could make no dif-
ference in placing the proper construction thereon.    But it
is not.

"When the terms of a contract are indefinite, uncertain, and
susceptible of two constructions, and by giving them one con-
struction one of the parties would be subjected to a forfeit-
ure, and by giving them the other no such forfeiture would

be incurred·and no injustice would be done to the other party, the contract should be so construed as not to create the forfeiture." *Jacobs v. Spalding,* 71 Wis. 177, 190, 36 N. W. 608; *Weidner v. Standard L. & A. Ins. Co.* 130 Wis. 10, 19, 110 N. W. 246; *Appleton I. Co. v. British Am. Assur. Co.* 46 Wis. 23, 1 N. W. 9, 50 N. W. 1100; *Wier v. Simmons,* 55 Wis. 637, 13 N. W. 873.

If one construction will make a contract legal and another will make it illegal, the former construction is to be preferred. *Alfree v. Gates,* 82 Iowa, 19, 47 N. W. 993; *Pitney v. Bolton,* 45 N. J. Eq. 639, 18 Atl. 211; *North Pac. L. Co. v. Spore,* 44 Oreg. 462, 75 Pac. 890; *Wyatt v. Larimer & W. I. Co.* 18 Colo. 298, 33 Pac. 144, 36 Am. St. Rep. 280; 3 Page, Contracts, § 1120. This court has said that "where a contract is fairly open to two constructions, by one of which it would be lawful and the other unlawful, the former must be adopted." *Waters v. McGuigan,* 72 Wis. 155, 157, 39 N. W. 382; *Hobbs v. McLean,* 117 U. S. 567, 6 Sup. Ct. 870; *U. S. v. Cent. Pac. R. Co.* 118 U. S. 235, 6 Sup. Ct. 1038.

It is argued in behalf of the plaintiff that the contract was void ab initio under the interstate commerce act, because the defendant could not contract to receive anything but money in payment for transportation, and that plaintiff is entitled to recover *quantum meruit* as if no express contract had been made. In support of this proposition, we are cited to Tariff Circular No. 14a, p. 43, issued by the Interstate Commerce Commission, as placing a correct construction on the federal law. Sec. 2 of the interstate commerce act, as originally drawn, made it unlawful for any common carrier to charge, collect, or receive a greater or less compensation for any service rendered in the transportation of passengers than it charged other persons for a like and contemporaneous service under substantially similar circumstances and conditions. For the purposes of this case, the differences between this section and sec. 4 of the Wisconsin law are not material. Prior to the passage of the Hepburn act (Act June 29, 1906, ch. 3591,

34 U. S. Stats. at Large, 584, U. S. Comp. Stats. Supp. 1907, p. 892) the federal law was interpreted to permit a carrier to exchange transportation in payment for advertising, and the Interstate Commerce Commission at least tacitly assented to such construction.  The Wisconsin Railroad Commission likewise ruled under our law that the statute did not forbid the exchange of transportation for advertising, provided the exchange was equal and that mileage was furnished at the regular rate of charge equal in value to the advertising done at the usual and customary rates of charge.  The amendment of 1906 to sec. 6 of the interstate commerce act prohibited a greater, less, or *different* compensation being charged one party than was charged another for a like service in the transportation of persons or property.  The Interstate Commerce Commission construed the word *"different"* in the amended law as prohibiting carriers from receiving anything but money in payment for transportation, inasmuch as that was the only common medium that could be used.  It evidently reached the conclusion that advertising was a different compensation for mileage than money, although each might have the same value, and rule 54, effective September 15, 1906, was promulgated to meet the existing conditions.  This case was not tried to fit the interstate commerce law if that law had been properly construed prior to the passage of the Hepburn act.

It is not necessary to decide whether advertising could be received in payment for mileage under ch. 362, Laws of 1905. The carriers and the commissions with which they had to deal construed the law as giving the right of exchange, provided things of equal value were swapped.  There is no positive prohibition in the law against making such exchange, and, unless it be held that there is an implied one, the construction given was correct.  A contract made to exchange transportation for advertising of equal value might well be entered into in perfect good faith and in the belief that it was legal. Neither legality nor good faith could be presumed in favor of

a contract calling upon the plaintiff to pay four times what the transportation furnished was worth. The contract being ambiguous, we think that construction should be adopted which would acquit the parties of entering into a contract which they must have known would fall under the ban of the law.

We fail to see where there is any question of accord and satisfaction in the case. There was no controversy of any kind between the parties when the supplemental contract of November, 1906, was made, and no settlement was made of any then existing dispute. The transaction lacked the necessary elements vital to an accord and satisfaction. It follows that the judgment of the circuit court is correct.

*By the Court.*—Judgment affirmed.