ATLANTIC TERRA COTTA COMPANY, Appellant, vs. GOETZLER and another, Respondents.

*April 26—May 14, 1912.*

*Contracts: Construction: Conflict between written and printed parts: Building contract: Time for furnishing materials.*

1. Where a contract is filled in upon a printed form and the written provisions cannot be reconciled with the printed, the written provisions control.

2. In a contract dated May 26th, by which a manufacturer agreed to supply to a building contractor terra cotta from a factory in New Jersey for a store building being erected in Wisconsin (the plans and specifications of which the manufacturer already had), a printed provision that the contractor should furnish details was modified by a typewritten provision that the manufacturer should "make up and furnish to the architect all details for his correction, etc., as to measurements." Another provision (printed, except the typewritten word "eight") required the first shipment to be made "within eight weeks from the date of receipt by the manufacturer of proper detail drawings and complete information from which to do the work," balance to be delivered as rapidly as the construction demanded, "provided complete drawings and information be received prior to ——." Then, in typewriting, it was stated that the manufacturer agreed to ship certain parts of the material "within the time mentioned above, or at least enough of it so that the middle store . . . can be occupied by August 1st." According to the proof this would require shipment of July 13th. *Held*, that the eight-weeks period began to run from the date of the contract, and not from the time the detail drawings were approved and returned by the architect.

APPEAL from a judgment of the circuit court for Manitowoc county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

Plaintiff is a corporation having its factory and principal place of business at Perth Amboy, New Jersey. Plaintiff and defendants entered into a contract by which plaintiff agreed to furnish terra cotta for a building at Manitowoc, Wisconsin, for the sum of $4,800. This action was brought to recover an alleged balance of $560.25 due upon said con-

tract, and in addition thereto the sum of $44.10 on account of expense incurred at defendants' request in resetting three columns in the front of the building. The defendants admitted that the sum of $560.25 was due on the contract, but denied that they were indebted to the plaintiff in any other sum. The defendants also counterclaimed for various items of damage alleged to have been sustained by reason of the terra cotta not having been furnished within the time required by the contract and for failure to furnish the quality of terra cotta required. Defendants also interposed a counterclaim for labor paid and material furnished to an employee of the defendants in reconstructing the columns in the front of the building. The case was referred to a referee to hear, try, and determine, and the referee found that the plaintiff was entitled to recover the sum of $560.25 claimed, but was not entitled to recover the item of $44.10 which it claimed. The referee allowed the defendants on their counterclaims damages amounting to $379.50, and found that the plaintiff was entitled to judgment for $180.75, with interest from May 10, 1910. Both parties filed exceptions to the findings of fact and conclusions of law made by the referee and both parties moved to modify the referee's report and to confirm the same as modified. The circuit court confirmed the referee's report without modification and ordered that judgment be entered in accordance therewith. From a judgment rendered pursuant to this order the plaintiff appeals.

For the appellant there was a brief by *Paul D. Durant,* attorney, and *H. F. Friedrich,* of counsel, and oral argument by *Mr. Friedrich.*

For the respondents there was a brief by *Kelley & Ledvina,* and oral argument by *E. L. Kelley.*

BARNES, J.   The appellant contends (1) that it shipped the terra cotta contracted for within the time required by the contract, and that in any event if there was a breach of the

contract in this regard it was waived; and (2) that it was entitled to recover the amount of $44.10 paid to its employee for work in reconstructing the columns in the front of the building. The referee found that proper detailed drawings and complete information were in the hands of the plaintiff as early as May 27, 1909, and that the eight-weeks period for shipment provided for in the contract should be computed from that date. The appellant contends that it was not in possession of such drawings and information until June 16th, and that the time for delivery should be computed from that date. The first shipment was not made until August 14, 1909; the second was made August 21st, and the final one September 15th.

The contract used was a printed form prepared by the plaintiff. At the end of the fourth article thereof the following addition was made in typewriting: "It is further agreed that manufacturer will make up and furnish to the architect all details for his correction, etc., as to measurements."

The following portion of article V was printed, except the word "eight," which was in typewriting:

"The first shipment of the material covered by this contract shall be begun within *eight* weeks from the date of receipt by the manufacturer of proper detail drawings and complete information from which to make the work, and the balance of the material shall be delivered as rapidly as the construction at the building shall require the same, provided complete drawings and information be received prior to ——."

Immediately thereafter the following was inserted in typewriting:

"Manufacturer agrees to ship the material required below the moulded course over first-story windows within the time mentioned above or at least enough of it so that the middle store next to main entrance Eighth street front can be occupied by August first, 1909."

The contract was executed on May 26, 1909. The plans and specifications drawn by the architect had been in the

hands of the plaintiff for some time before this date.   The referee found on sufficient evidence that it required eight days for a car to reach Manitowoc from plaintiff's factory; that it required ten days to unload, lay out, and set in place the terra cotta needed for the middle store so as to have it ready for occupancy by August 1st, and that the material required for said store building should have been shipped as early as July 13th.   It is undisputed that the first carload was shipped August 14th, the second August 21st, and the final car September 15th.   The referee also found that under the contract the plaintiff was obliged to ship all of the terra cotta within eight weeks from May 27th.

There is some force in the claim of the appellant that, inasmuch as it was obliged to prepare details and submit them to the architect for approval, the eight-weeks period did not commence to run until such details were completed and sent to the architect and approved and returned by him.   The matter of settling upon the details and of receiving "complete information," according to appellant's contention, was not concluded until June 16th.

If we were to adopt the construction of the contract most favorable to the appellant that it would possibly bear, it is apparent that there were two substantial breaches of it.

It is clear that the undertaking of the appellant to furnish enough terra cotta so that the middle store could be made ready for occupancy by August 1st was absolute, unless there was some unnecessary delay for which the respondent was responsible, and there was none.   This material should have been shipped as early as July 13th, whereas the first shipment was not made until more than a month thereafter.   Conceding that the eight-weeks period as to all of the material except that needed to complete the middle store began to run on June 16th instead of May 27th, the contract was breached as to this portion of the terra cotta also, because it provided that after the eight weeks had elapsed the material was to be "delivered as

rapidly as the construction at the building shall require the same." This was not done. The eight-weeks period, computed from June 16th, would expire August 11th, and the last shipment was not made until September 4th, and the evidence shows there was considerable delay and waiting for this last shipment as well as for the others.

It is apparent, therefore, that if the contract be given a construction decidedly favorable to the appellant, it was breached in the two particulars mentioned, and these breaches would be sufficient to sustain the judgment if we knew that the same damages would result therefrom as were found to result from the breaches found by the referee and the circuit judge. The referee reached the conclusion that appellant was obliged to ship the terra cotta needed for the middle store as early as July 13th, and to commence shipping the balance by July 22d, that is, eight weeks from May 27th, and further found that the respondents sustained the following items of damage because of noncompliance with the contract so interpreted: Extra cost in the erection of inside walls, $120; extra cost in rebuilding scaffolds and shoring up joists, $117.50; expense of heating, due to delay in the work until cold weather set in, $98; material and labor furnished plaintiff in resetting columns, $44; making in all $379.50. It might well be that if the referee had concluded that appellant was not obliged to begin shipping the terra cotta, except that required for the middle building, until eight weeks from June 16th instead of eight weeks from May 27th, he would not have allowed as much damages as he did for extra fuel cost and possibly not so much on some other items. We therefore conclude that the judgment must be sustained, if it is sustained, on the theory that the referee and the court placed a proper interpretation on the contract. The difficulty in arriving at the intention of the parties is due to the fact that art. V of the contract as printed was allowed to remain intact and uncompleted although it did not express the agreement arrived at, and be-

cause it is not clear to what extent the parties intended to modify it by the written portion of the contract immediately following. It is a well recognized rule of construction that where a contract "is written in part and printed in part, as where it has been filled in upon a printed form, the parties usually pay much more attention to the written parts than to the printed parts. Accordingly, if the written provisions cannot be reconciled with the printed, the written provisions control." *Hicks P. Co. v. Wis. Cent. R. Co.* 138 Wis. 584, 589, 120 N. W. 512; *Gilbert v. Stockman,* 76 Wis. 62, 65, 44 N. W. 845; 2 Page, Contracts, § 1119.

The referee concluded that the parties intended that the eight-weeks period should commence to run from the day after the date of the contract, and that, taking art. V as a whole, there was no design to extend the period of delivery until eight weeks after the details had been completed and were approved and returned by the architect. In support of this construction, it appears that the printed portion of the contract requires the contractor, instead of the manufacturer, to make and furnish details. If this provision was permitted to remain intact, the reason for having the eight-weeks period begin to run after the details were furnished is obvious. The plaintiff could not know when the details would be furnished by someone else. But this part of the contract was modified by requiring the plaintiff to furnish the details, so the time of their preparation was under its control and it knew just how long their preparation would take. In the next place it is somewhat significant that, after providing for the first shipment, the printed portion of the contract is incomplete as to when the balance of the material shall be shipped. It recites that the same shall be shipped as rapidly as the construction of the building shall require, "provided complete drawings and information be received prior to,"—no date being inserted. More significant still is the language used in the typewritten portion of art. V. By it the manufacturer agreed to

ship the material for the middle store within "the time men-
tioned above," or enough of it so that the store could be occu-
pied by August 1st. The words "time mentioned above"
mean either "eight weeks" from the date of the contract or
they mean eight weeks from the time within which detail
drawings would be prepared and approved and full informa-
tion furnished. If they mean the latter, then it is perfectly
apparent that the details could not be prepared at Perth Am-
boy, New Jersey, forwarded to Manitowoc for approval by
the architect, and be returned by him to the shop, and eight
weeks time taken thereafter to prepare and load the material,
and still have it arrive in time to permit the completion of the
middle store building by August 1st. There is nothing to in-
dicate that this date was inserted for the purpose of shortening
the time of performance of the contract. On the contrary, it
would seem to have been inserted for the benefit of the manu-
facturer. The material below the moulded course over the
first-story windows was to be shipped "within the time men-
tioned above," or *"at least enough of it"* to permit the middle
store to be occupied by August 1st. The parties evidently had
in mind that all of the terra cotta below the moulded course
referred to should be shipped before August 1st in order to
meet the contract requirements. This is consistent with the
idea that the eight-weeks period commenced to run with the
date of the contract and that the parties understood that in so
far as the time of performance was involved the plans and
specifications which the plaintiff had in its possession for some
time and from which it proposed to prepare the details consti-
tuted the full information which the defendants were to
furnish. It is clear that the contractor was not required to
either make or furnish detail drawings, notwithstanding what
is said in art. V of the contract. If any particular signifi-
cance is to be given to the words "receipt . . . of complete
information," we think the parties had in mind the plans and
specifications rather than any comments which the architect

might make on the details which were sent to him for approval.

On the other points raised the findings of the referee are sustained by the evidence. We find no error in the record, and the judgment must therefore be affirmed.

*By the Court.*—Judgment affirmed.