CLOUSTON v MAINGAULT.

Opinion delivered November 4, 1912.

1. TRIAL—DIRECTING VERDICT.—Where there was a conflict in the evidence as to whether the plaintiffs complied with their contract, it was error to direct a verdict in their favor. (Page 216.)

2. CONTRACT—CONSTRUCTION.—The construction of an unambiguous contract is for the court, and not the jury. (Page 216.)

3. SAME—MEANING OF CONTRACT TO DIG WELL.—A contract to dig a well "to be made in the first good water-bearing white or gray sand" means that the well should be made in the first white or gray sand where there is a good supply of water. (Page 217.)

Appeal from Chicot Circuit Court; *Henry W. Wells,* Judge; reversed.

STATEMENT BY THE COURT.

The appellees and the appellant entered into the following contract: "The party of the first part (appellees) agrees to make a deep well on the plantation of the party of the second part (appellant) at Lakeport, Ark. The party of the first part agrees that this well is to be four inches from top to bottom and are to use a thirty-foot, all brass Cook strainer. This well is to be made in the first good water-bearing white or gray sand. The outside casing to be left in. The party of the first part is to furnish all material, tools, machinery and labor in sinking this well. The party of the first part is not to advance any money on the work until the well is completed and water has been produced."

Then follows a provision as to the use of certain machinery and the specification of the consideration.

The appellees sued appellant for the possession of certain machinery, a part of the consideration, and for the balance of the cash consideration alleged to be due under the contract, setting up that they had performed the contract on their part and that appellant had failed to perform the contract on his part by refusing to pay the balance of the cash consideration and by withholding from them the possession of certain machinery belonging to the appellees. They alleged that appellant accepted the well, but failed to pay the consideration agreed upon.

Appellant in his answer admitted the contract, but denied

that appellees had complied with the contract on their part, and denied all other material allegations of the complaint. The case was submitted to a jury.

The appellant contends that the contract called for good water in the first white or gray sand. The appellees contend that the contract only required them to get a bountiful supply of water in the first white or gray sand, and that they had complied with the contract when they obtained a good supply of water in the first white or gray sand, regardless of the quality of the water.

There was testimony on behalf of the appellees tending to show that they had complied with their contract.

On behalf of appellant one witness testified in part as follows:

"Q. Do you know what sort of sand that well is resting in? Ans. I know what color it is.

"Q. What color is it? Ans. Gray sand.

"Q. What color besides gray is mixed in with it? Ans. There is some white and some looks like it is blue.

"Q. Is there anything else in it besides sand? Ans. I don't know, sir.

"Q. How much blue was there in that deposit? Ans. I can not say positively.

"Q. Was it pure sand, or a mixture of sand, clay and mud? Ans. I would call it a mixture.

"Q. Mixture of what? Ans. Mud, sand and gravel."

Another witness testified that he saw the earth that came up from the well where they had sunk it. "It was deep gray sand with black particles in it; it looked like pepper and salt; black like pepper." Witness would "term it a gray sand." "If the black particles had not been in it, it would have been pure white sand. The sand was gray. It was sand mixed with black particles. The particles were gray, and some of them black, but it looked like pepper and salt. Witness was not an expert; but he said "it was a mixture of gray and white sand. It was black and gray particles of sand." In another place witness said "it was gray sand with white and black particles in it."

The appellant testified in part as follows: "The well is 379 feet deep, 179 feet deeper than where they struck the first

white sand. The deposit where the well was left in was fine blue looking sand. Mr. Graham brought me some pretty white sand over to the store and told me they got that where they were down there, and Mr. Maingault told me that Mr. Graham made a mistake in telling me that; that that sand didn't come from there; that they got that out of the pipe from another depth; he said that sand didn't come from there. They had a supply well there between seventy and eighty feet deep, a four-inch well, they used to run the machinery with. The sand that came out of that was as good sand as the well was in now."

The court gave, over the objections of appellant, a peremptory instruction directing the jury to find for the appellees.

The appellant, among others, asked the court to instruct the jury as follows:

"2. The court instructs the jury that the burden of proof in this case is upon the plaintiffs to show that they complied with their contract in all respects."

"3. The court instructs the jury that, unless they believe from the evidence that the well was made in the first good water-bearing white or gray sand, they must find for the defendant."

These, with other prayers numbered respectively from 1 to 9, the court refused. The court rules on these instructions separately, and the appellant duly saved his several exceptions to the ruling of the court in refusing the separate requests as they were presented.

*N. B. Scott,* for appellant.

Where there is competent evidence tending to establish the issue in favor of the defendant, it is error to direct a verdict for the plaintiff. 89 Ark. 368. The contract in this case should be construed most strongly against the plaintiff, who prepared it. 90 Ark. 88; 90 Ark. 256; *Id.* 522. The expression in the contract, "good water-bearing white or gray sand," is ambiguous as to whether it means wholesome water or a plentiful flow of water.

If the meaning of a contract is ambiguous, the conduct of the parties under it may be considered in explanation of its terms, and its meaning should be left to the jury. 88 Ark.

363; 89 Ark. 368; 94 Ark. 461; 95 Ark. 449; 97 Ark. 522; 98 Ark. 421.

*W. Garland Streett* and *Carmichael, Brooks & Powers*, for appellees.

Ordinarily, the construction of a contract is a question for the court and not for a jury; and in the construction of a contract the words therein used are to be given their usual, common and ordinary meaning. Anson on Contracts, 330. Under this rule of construction, it is patent that the thing intended by the contract was the production of water, and not the quality of the water. The court was, therefore, right in holding that, if the sand was white or gray and water-bearing, and it was the first good white or gray sand that bore water, the contract had been fulfilled.

The authorities are to the effect that the production of good, pure, wholesome water is not implied in the use of the word "well," and if not implied in the use of that word, it would not be included in the expression "first good, water-bearing white or gray sand." Cyc. "Wells;" Fed. Cas. No. 371; Words and Phrases; 27 Pac. 394.

WOOD, J., (after stating the facts). 1. There was a conflict in the evidence as to whether the appellees complied with their contract by making the well "in the first good water-bearing white or gray sand." The court therefore erred in taking this question from the jury and in directing a peremptory verdict in favor of the appellees. In his prayer No. 3 the appellant asked that this question be submitted to the jury. The prayer was correct, and the court should have granted it. The court also should have given appellant's prayer for instruction No. 2.

2. There was no ambiguity in the contract under consideration, and its construction was for the court and not for the jury.

The intention of the parties must be gathered from the contract as a whole; and, where the contract is unambiguous, no resort can be had to extraneous evidence to determine its meaning. The meaning must be ascertained from the language itself.

Giving the words "first good water-bearing white or gray

sand" their usual and ordinary meaning and construing them according to their arrangement and grammatical construction, we are of the opinion that appellees were required to make the well in the first white or gray sand that was good water-bearing. The adjectives, "first," "water-bearing," "white," "gray," all qualify the noun "sand." The adjective "good" is used in an adverbial sense, and qualifies the adjective "water-bearing" next succeeding it in the sentence, meaning that the sand must be good "water-bearing," that is furnishing a sufficient or bountiful supply of water. Water-bearing is a compound word. If the word "water" were not combined with the word "bearing" then the adjective "good" would qualify "water," and appellant's contention would be correct. But that would change entirely the obvious meaning of the sentence and would give the contract a meaning manifestly against the intention of the parties, as gathered from the language of the entire contract. For in that case the contract would read as follows: "This well is to be made in the first good water bearing white or gray sand." If this were the arrangement of the sentence and the meaning was only to require good water, then it was wholly unnecessary to employ the other words "bearing white or gray sand."

The parties evidently intended, by the plain meaning of the words as used in this contract, that the well should be made in the first white or gray sand where there was a good supply of water. The adjective "good," in other words, referred to quantity rather than to the quality of the water. Such being the plain meaning of the language used in the contract, we must give it this effect. If the parties had intended "good water"—referring to the quality, instead of a good supply of water—referring to the quantity, it would have been easy to have so arranged the sentence and used words that would have expressed that meaning. They have not done so, and the court can neither eliminate nor supply nor rearrange the words and sentences in the unambiguous contract, but must construe it as the parties have made it. The construction given the contract by the trial court was in accord with these views.

It follows that the court did not err in refusing the prayers for instructions in which appellant requested that the con-

struction of the contract be left to the jury and to have the jury determine whether or not his contention was correct.

For the errors indicated *supra* in refusing prayers for instructions, the judgment is reversed and the cause remanded for a new trial.

HART and KIRBY, JJ., concurring.