PLANTERS FERTILIZER & CHEMICAL COMPANY *v.* COLUMBIA COTTON OIL COMPANY.

Opinion delivered October 30, 1916.

1. CONTRACTS—PRINTED AND WRITTEN PROVISIONS—CONSTRUCTION.—Where a contract is partly written and partly printed, and these provisions conflict, the written provisions will control.

2. COMMERCIAL TERMS—"F. O. B. AT SELLER'S FACTORY."—A provision in a contract of sale containing the words "f. o. b. at seller's factory, New Orleans, La.," the goods being sold to a purchaser in Arkansas, *held* to mean that the goods were to be placed on cars for shipment at the seller's warehouse in New Orleans without any expense or act on the part of the buyer, and that as soon as so placed that the title was to pass absolutely to the buyer, and it is to pay the freight.

3. CONTRACTS—PRINTED AND WRITTEN PROVISIONS—CONSTRUCTION.— A contract of sale provided in a printed portion that the seller should pay the freight, and in a written portion that the buyer should pay the same. *Held,* the written provision would control, and there being no ambiguity in the contract, its construction was for the court.

Appeal from Columbia Circuit Court; *C. W. Smith,* Judge; reversed.

*Stevens & Stevens,* for appellant.

In construing a contract executed on a printed form, if there are printed and written words in the contract differing in meaning, the written words will control. Bishop on Contracts, § 413; Lawson on Contracts, § 389; 9 Cyc., § 584; 11 Cent. Dig., tit. Contracts, 745; 112 S. W. 332.

"Where there are two clauses of a contract in any respect conflicting, 'that which is specially directed to a particular matter controls in respect thereto.'" 72 Ark. 633. See, also, 107 S. W. 282, 283. The erasure appearing in the contract sued on is explained by the witness Turner as not having been made on the copy introduced in evidence because of the short carbon, and clearly establishes the contract sued on as the original, which is the best evidence. 79 Ark. 475. Before this copy could be in evidence, it should have been shown to be in fact a copy. 17 Cyc. 517-18. The failure of the defendant to produce any evidence to show a change in the contract after it was signed, left no facts to be settled by the jury, and the court should have directed a verdict. 69 Ark. 562, 568; 104 Ark. 267; 89 Ark. 239.

*Rose, Hemingway, Cantrell, Loughborough & Miles,* for appellant.

It is for the court to construe a written contract. 101 Ark. 469; 105 Ark. 213; 89 Ark. 239; 78 Ark. 574-577. By the terms of the contract, as the blanks were filled in writing, the parties agreed on a price of $8.25 per ton, f. o. b. cars at seller's factory, New Orleans. By this agreement the defendant was bound for the freight

charges, becoming the owner of the goods when delivered at the place stipulated. Where there are two repugnant provisions in a contract, the first will control. 120 Ark. 121. Where a contract is made up on a printed form, and blanks are filled out in writing, in construing the contract, the written part controls. 38 N. E. 907; 4 So. 197-199; 83 N. Y. 518-523; 60 N. W. 844, 845; 108 Pac. 952.

*C. W. McKay*, for appellee.

It appears from the contract or order that it was made subject to approval of appellant at New Orleans, and the evidence shows that it was given to its agent at Magnolia, and forwarded to New Orleans for appellant's signature and approval. It was a mere proposal to buy, and, until accepted by the seller, not binding. The acceptance must be identical with the terms of the order to render it binding. 74 Ark. 16; 76 Ark. 371; 86 Ark. 27; 13 Cyc. 52, 53; 96 Ark. 606; 98 Ark. 81; 110 Ark. 123.

If it be conceded that the clause stipulating that the second party should pay the freight, the amount thereof to be deducted from the purchase price in settlement, was erased from the original, etc., still, the copy returned to appellee containing that clause is the contract that is binding upon the parties. If an acceptance on the part of the seller is necessary to bind the buyer, then the contract as accepted in this instance is the one returned to the buyer.

There is no contradiction between the clauses in dispute as to the payment of freight. F. o. b. cars at seller's factory, New Orleans, means free on board cars at that point and nothing else. It would mean also that that was the point of delivery, the buyer to pay the freight thence to destination, if it were not for this further clause which requires him to pay the freight, but, having done so, it authorizes him to deduct it from the stipulated price in settlement therefor.

Appellant placed the two clauses in the contract itself. A contract will be construed most strongly

against the party who drafted it.    73 Ark. 338; 74 Ark.
41; 84 Ark. 431; 90 Ark. 88; 87 Ark. 522; 105 Ark. 518;
112 Ark. 1; 171 S. W. 136.

HART, J.    The Planters Fertilizer & Chemical
Company sued the Columbia Cotton Oil Company *et al.*
to recover $2,813.36, which it alleges was the balance
due it for 1,250 tons of acid phosphate sold by defend-
ant to the oil company.    The material facts are as
follows:

The Planters Fertilizer & Chemical Company is a
corporation organized in the State of Louisiana.    It
is located at New Orleans and is engaged in the busi-
ness of selling fertilizers.    The Columbia Cotton Oil
Company is a corporation organized under the laws
of the State of Arkansas, engaged in business in Mag-
nolia, Arkansas.    On the 30th day of July, 1914, the
two corporations entered into a written contract,
whereby the former agreed to sell the latter 1,250 tons
of acid phosphate.    The contract was drawn up on
a printed form of the selling company which was rep-
resented by its vice president and manager, W. E.
Turner.    The purchaser was represented by J. W.
Bird, its manager.    That part of the contract which
is necessary for a determination of the issues raised by
the appeal is as follows:

"Witnesseth:    That the party of the first part
hereby sells to the party of the second part and the
second party hereby purchases from the said first party
the amount of fertilizer named below at the prices set
opposite the respective brands per ton, in car lots,
f. o. b. cars at seller's factory, New Orleans, La.

"Quantity—1,250 tons acid phosphate.    Brand—
16% avail.    Price—$8.25 per ton.    Size of bags, . . . .
pounds.

"Second party agrees to pay freight, amount of
such freight to be deducted from above prices in set-
tlement.    Shipments to be made in car lots."

The words, "Seller's Factory, New Orleans, La.,
1,250 tons acid phosphate, 16% avail. $8.25," were

written in the contract with an indelible pencil. The
contract was executed in triplicate. The copy retained
by the selling corporation had a pencil mark through
all that part of the contract quoted above which begins
with, "Second party agrees to pay freight," etc. The
copy of the contract sent to the purchaser did not have
the pencil mark run through this part of the con-
tract, which was in printing in all the copies.

W. E. Turner testified substantially as follows:
I am vice president and manager of the plaintiff cor-
poration and made the contract with the defendant
corporation. The contract was executed at Magnolia,
Arkansas, July 30, 1914, by J. W. Bird, for the Cotton
Oil Company, and by myself for my own company. I
filled out the contract with an indelible pencil, and then
handed the pencil to Mr. Bird for him to sign the con-
tract for his corporation. I noticed that the printed
part, "Second party agrees to pay freight, amount of
such freight to be deducted from above prices in settle-
ment. Shipments to be made in car lots," had not been
marked out of the contract, and I picked up an ordinary
lead pencil and marked it out. The reason I did not
mark it out with the indelible pencil was because I had
handed it to Mr. Bird to sign the contract. The con-
tract was signed in triplicate. I had to slip the carbon
down for Mr. Bird to sign the contract, and in doing
so, it went down below the words marked out in the
copy held by my company, and because the carbon
had been pulled down below the clause which was
marked out by me on what we called the original con-
tract, is the reason why the clause is not marked out on
the other two copies of the contract. It was our inten-
tion that the clause in question should be marked out
of all the copies." The question involved in the appeal
is whether or not the purchaser or seller is bound for
the freight under the terms of the contract. If the
purchaser is bound for the freight, it owes the seller
a balance of $2,645.31. If the seller is bound to pay the
freight, there is nothing due it. There was a verdict

and judgment for the defendant, and the plaintiff has appealed.

(1-2)     It is a well recognized rule of construction that where a contract is written in part and printed in part, as where it has been filled in upon a printed form, the parties usually pay much more attention to the written parts than to the printed parts. Accordingly, if the written provisions can not be reconciled with the printed, the written provisions control. It has been said that this rule is but the teaching of human experience crystallized into law. The reason given is that the written words are the immediate language and terms selected by the parties themselves for the expression of their meaning, and thus more safely and clearly indicate the intention of the contracting parties. On the other hand the printed words are a general formula adapted equally to their case, and that of all other contracting parties upon similar occasions and subjects. *American Express Co.* v. *Pinckney*, 29 Ill. 392; *Atlantic Terra Cotta Co.* v. *Goetzler*, 150 Wis. 19, A. & E. Annotated Cases 1913, E. p. 958 and case notes. Numerous cases from the courts of last resort of the various States and from the Supreme Court of the United States are cited in support of the rule. The rule has also been recognized by this court in the case of *Leader Co.* v. *The Little Rock Ry. & Elec. Co.*, 120 Ark. 221. In the application of this rule, it is readily apparent from reading the contract quoted above that the written words are inconsistent with the printed words and in application of the rule governing such cases, the printed words in the contract must yield to the written words. The printed words provide, in effect, that the purchaser shall pay the freight and deduct the same from the price of the fertilizer. The written language of the contract provides that the fertilizer shall be paid for at the prices set opposite the respective brands f. o. b. at "Seller's factory, New Orleans, La." The words, "At the prices set opposite the respective brands f. o. b. cars at seller's factory, New Orleans, La.," mean that the seller was to load the fertilizer on the

cars at its warehouse in New Orleans, La., and that the purchaser was to pay the freight from there to the place of destination.

The words f. o. b. literally mean, free on board, and with the added words, "at seller's factory, New Orleans, La.," etc., mean that the fertilizer was to be placed on cars for shipment at the seller's warehouse in New Orleans without any expense or act on the part of the buyer, and that as soon as so placed, the title is to pass absolutely to the buyer, and it is to pay the freight. *Phoenix Packing Co.* v. *Humphrey-Ball Co.*, 108 Pac. (Wash.) 952; *Vogt* v. *Schienbeck*, 122 Wis. 491, 2 A. & E. Ann. Cas. 814; *Hurst* v. *Altamount Mfg. Co.*, 73 Kan. 422, 9 A. & E. Ann. Cas. 549; *R. J. Menz Lbr. Co.* v. *E. J. McNeeley & Co.*, 108 Pac. (Wash.) 621, 28 L. R. A. (N. S.) 1007.

(3)    If it be considered that the printed portion of the contract providing in substance that the seller should pay the freight is still in the contract, it is, as we have already seen, in conflict with the written part of the contract which means that the buyer shall pay the freight.    Hence there was no ambiguity in the contract, and its construction was for the court, and not for the jury.    *Starnes* v. *Boyd*, 101 Ark. 469; *Clouston* v. *Maingault*, 105 Ark. 213; *Mann* v. *Urquhart*, 89 Ark. 239; *Thomas* v. *Johnson*, 78 Ark. 574-577.

Judgment reversed and the cause remanded for a new trial.