Luther HOLM, Appellant,

v.

C. N. HANSEN, Appellee.

No. 2–57522.

Supreme Court of Iowa.

Dec. 15, 1976.

504

Dick L. Jensen, of Dreher, Wilson & Adams, Des Moines, for appellant.

Thomas E. Mullin and Richard McConville, of Mullin, Mullin, McLaughlin & Harvey, Creston, for appellee.

Heard by MOORE, C. J., and MASON, UHLENHOPP, HARRIS and McCOR-MICK, JJ.

McCORMICK, Justice.

This appeal involves an action for breach of warranty of cattle purchased by plaintiff Luther Holm from defendant C. N. Hansen. The case was tried to the court at law. The trial court found defendant proved an accord and satisfaction and entered judgment accordingly. The questions presented are whether the trial court erred in holding plaintiff's claim is barred by an accord and satisfaction, and, if so, whether the court erred in its alternative determination of plaintiff's damages. We hold that the court erred in finding an accord and satisfaction was established and in its alternative assessment of damages. We reverse and remand for determination of plaintiff's damages and entry of new judgment.

Because this is a law action, the trial court's findings of fact have the force of a jury verdict. If supported by substantial evidence they will not be disturbed. We view the evidence in its light most favorable to the judgment and construe the court's findings liberally. However, we are not bound by trial court conclusions of law. *Farmers Insurance Group v. Merryweather*, 214 N.W.2d 184, 187 (Iowa 1974).

This litigation arose from the following sequence of events:

December 27, 1969, plaintiff, who owned a brood herd of 41 angus cows and one angus bull, purchased 50 cows and one bull from defendant to increase his herd. The purchased cattle were mainly hereford. Defendant told plaintiff the purchased herd was "clean" and the cows were with calf. However, as plaintiff learned the next day, defendant's herd had not been brucellosis tested within 30 days prior to sale as required by law, and plaintiff, upon advice of his veterinarian regarding the danger of administering the test to cows heavy with calf, decided not to require the test be given.

December 28, 1969, plaintiff put the new herd on his south farm, separate from his angus herd, which he maintained on his home farm.

December 30, 1969, one of the purchased cows aborted. Plaintiff returned this cow and one which had aborted prior to purchase to defendant and received two replacement cows which were put with those on his south farm.

Thereafter, on a date not disclosed, defendant sold the two returned cows for slaughter; he was advised they reacted positively upon testing for brucellosis. He notified plaintiff.

April 6, 1970, the purchased herd was tested for brucellosis by plaintiff's veterinarian at defendant's suggestion and expense. One cow was identified as a suspect and was segregated from the herd; the herd was quarantined.

May 7, 1970, the quarantined herd was retested and no brucellosis was detected; the quarantine was lifted; plaintiff's veterinarian gave the herd "a clean bill of health". Defendant told plaintiff that when he got the matter straightened out he would settle with him.

May 26, 1970, the suspect cow which had been segregated from the herd was sold for slaughter. Because one cow had died in a winter blizzard, this left 48 cattle in the herd.

June 2, 1970, plaintiff and defendant met at the Winterset sale barn. Defendant paid plaintiff $600 in the transaction which is the basis of defendant's claim of accord and satisfaction. (That transaction is fully described in division I).

November 1970, plaintiff's two herds were combined and placed on plaintiff's home farm.

January 1971, plaintiff found several aborted calves. One fetus was found to have brucellosis. The combined herd was then tested, and nine cows were either brucellosis suspects or reactors. Included were an angus from plaintiff's original herd and three herefords who had reacted negatively to the 1970 testing. The herd was quarantined, and defendant was notified of the continuing problem; he refused to do anything about it.

February 1971, plaintiff sold the nine cows showing evidence of brucellosis, along with three others, for slaughter.

March 1, 1971, additional testing revealed five more cattle with evidence of brucellosis.

March 8, 1971, upon recommendation of a state veterinarian, plaintiff sold the remaining cattle for slaughter. During 1971 he also sold 43 calves produced by the purchased herd.

This action was brought in June 1972. Plaintiff sought damages for the loss of his entire herd on several theories, including breach of express and implied warranties. After trial, the court held defendant had proved his defense of accord and satisfaction based on the June 2, 1970, transaction between the parties. However, the court alternatively held, in the event its finding of accord and satisfaction was incorrect, that defendant breached an express warranty that the cattle he sold plaintiff were clean, that he breached an implied warranty of their fitness as breeding stock, that he acted illegally in selling the cattle for removal from his premises without brucellosis testing within the preceding 30 days, and that plaintiff sustained actual damages of $3000.

I. *The finding of accord and satisfaction.* Accord and satisfaction is a method of discharging a claim whereby the parties agree to give and accept something in settlement of the claim and perform the agreement, the "accord" being the agreement, and the "satisfaction" its execution or performance. It is a new contract substituted for an old contract, which is thereby discharged, or for an obligation or cause of action which is settled. It must have all of the elements of a valid contract. *Kellogg v. Iowa State Trav. Men's Assn.*, 239 Iowa 196, 210–212 29 N.W.2d 559, 567 (1948).

We first review the evidence from which the trial court concluded an accord and satisfaction was established.

Plaintiff's version of the transaction of June 2, 1970, was as follows:

Q. * * * Would you describe the conference?

A. He got in the truck with me, and we discussed selling the one and the one dying, and he asked me what would it take to make me happy, and I informed him that I had bought 50 cows, and that is what I would like to have was 50 cows for my herd.

      *      *      *      *      *      *

Q. How did you arrive at the figure $600?

A. He asked me to set a price, and I said it was entirely up to him, and he wanted to know if $600 would do, and that would replace the two cows, and that was the end of the conference.

On cross-examination plaintiff said he had made no claim of defendant. The discussion was initiated by defendant who "wanted to know what it would take to make it right". Plaintiff reiterated that he accepted the $600 because it would make up for the loss of his two cows.

Defendant testified he told plaintiff he would settle with him after the April 1970 brucellosis problem was straightened out. The cattle were released from quarantine on May 7, 1970, and the only cow showing evidence of brucellosis was sold May 26,

1970. Defendant testified as follows regarding the June 2, 1970, transaction:

Q. What did he say and what did you say at that particular time? A. * * * I said, "Luther, what is it going to take for me to straighten this up with you now and so we will be done with it?" He said, "I would like to have two cows brought back." I said, "Okay, what do you want?" So we arrived at a price of $600. I give him $600 and the suspect cow, and I said, "Now Luther, are you going to be satisfied?" And he said, "Yes, I'm happy with the deal." I said, "I don't want to hear no more about it."

* * * * * *

Q. What, if anything, did he say about you buying two more cows for him? A. Well, he wanted to know if I would take this check and buy two more cows when I paid him, and I said "No, I would just rather not, Luther."

Later in his testimony, defendant characterized the settlement as follows:

He got this suspect cow, and the cow that was lost in the lot at the time of the deal, * * * and he got the price out of the suspect cow, and I give him $600 in money, and that was to be the settlement. That was my understanding.

■ In making findings of fact, the trial court summarized the transaction as follows:

On June 2, 1970, at Winterset, plaintiff met defendant at the sale barn. Defendant asked plaintiff what they could do to straighten up. Plaintiff told defendant that he had bought 50 cows and wanted 50. Defendant then asked what it would take to satisfy plaintiff. The sum of $600.00 was agreed upon, plaintiff to retain the cattle and $147.70 received from sale of the suspect. Plaintiff asked defendant to use the $600.00 to buy him two replacement cows but defendant declined. Plaintiff accepted defendant's $600.00 check, cashed it and used the proceeds.

We are bound by these findings of fact because they are supported by substantial evidence. However, we believe the court was mistaken in holding these facts estab-lished the defense of accord and satisfaction.

The court reached its conclusion through the following reasoning:

* * * It cannot be claimed that either party possessed an advantage when they met at Winterset on June 2, 1970. The breaches were then apparent, each party knew all relevant facts, the future prospects were as nearly visible to the plaintiff as to the defendant and the latter's inquiry to the plaintiff in substance: "What will it take to satisfy you?", required a reply from plaintiff that matured into agreed dollars.

The court is unable to accept plaintiff's assertion that the conversation that day was limited to partial satisfaction as of that date but must conclude that the parties were intending to effect a resolution of their problem in its entirety, knowing all the present facts and realizing the future possible prospects.

The court also said:

It was plaintiff's duty, if he did not accept the condition of full satisfaction or settlement attached to defendant's tender, to reject it or, at least, make it clear that he was reserving a right to sue if the disease again manifested itself.

The trial court relied on the following statements of principle in *Shahan v. Bayer Vehicle Co.*, 179 Iowa 923, 929–930, 162 N.W. 221, 223 (1917):

"The rule seems to be well recognized that, where one makes demand upon another for the discharge of an unliquidated demand, and the liability of the alleged debtor is in good faith disputed, or the amount of the liability is disputed, the tender and acceptance of a less sum than might upon a full investigation be found due, discharges the debt in full. The law looks with favor upon the adjustment of controversies without the intervention of courts. It will not allow one to provoke a controversy with his creditor and bring him into court, after he has accepted and retained money which has been tendered him by his creditor in full settlement of

his claim, when he knew at the time that the other contended that that was all that was due, and in good faith denied all further liability.

"From the acceptance and retention of the amount tendered under such circumstances, a presumption arises that it was accepted and retained in full satisfaction of the obligation, nothing further appearing. To constitute an accord and satisfaction, under such circumstances, all that is necessary is that the money should be tendered in satisfaction of the claim; that the tender be accompanied with such acts and declarations as amount to a condition that, if the money is taken, it is accepted in satisfaction. The conditions under which the tender is made, and the conduct of the party at the time of the tender, however, must be such that the party to whom it is tendered is given to understand that, if he takes it, he takes it in satisfaction of his claim, so far as the other party is concerned. He must either refuse or accept it. If he accepts it, he is bound. If he takes it, his claim is canceled."

We do not believe the facts as found by the trial court, viewed in their light most favorable to the judgment, support the court's conclusion that both parties intended in the June 2, 1970, transaction "to effect a resolution of their problem in its entirety, knowing all the present facts and realizing the future possible prospects." We find no evidence from which the trial court could reasonably find plaintiff realized brucellosis might not have been eradicated from the herd and intended to settle for that possibility by accepting defendant's tender of $600. Therefore, under the *Shahan* principle, no inference of full satisfaction arose.

For the principle employed by the trial court to apply, plaintiff would have to be aware of the possibility of future loss and of defendant's intention to include it in the settlement:

" * * * The pertinent, relevant, and material facts, and the intention and contentions of each party must be known and understood by the other, in order to make the settlement valid.

\* \* \* \* \* \*

" * * * 'There can, therefore, be no accord and satisfaction unless the creditor, or party receiving the thing or promise offered, understands, or from the circumstances of the offer, or the acts or declarations with which it is accompanied, is bound to understand, that he takes it in full satisfaction of his claim.' " *Kellogg v. Iowa State Trav. Men's Assn.,* supra, 239 Iowa at 211, 29 N.W.2d at 567.

The only claim made by plaintiff was for loss of two cows which had already occurred. His veterinarian had given the remainder of the herd a clean bill of health. The trial court imputes to plaintiff a prescience that even his veterinarian did not display.

■ Assuming defendant foresaw the possibility that brucellosis had not been eliminated from the herd and intended, as he now alleges, to settle for that contingency in the 1970 transaction, he had a duty to make plaintiff understand that the $600 was tendered in satisfaction of that claim as well as the claim plaintiff actually made. Otherwise the settlement could not satisfy the present claim. See *Gibson v. Deuth,* 220 N.W.2d 893, 895 (Iowa 1974).

Plaintiff made the claim on defendant's invitation that he should do so after the quarantine was lifted and the suspect cow sold for slaughter. Having been invited by defendant to await those events before presentation of his claim, plaintiff had no reason to believe defendant intended the settlement to encompass damages which had not yet accrued. Defendant did not dispute his liability for plaintiff's claim for loss of two cows, nor did he dispute the amount he should pay. In fact, he established the amount and, like plaintiff, he treated the amount as equivalent to replacement of the two cows whose loss was the basis of plaintiff's claim.

The situation is analogous to that in *Blockhead, Inc. v. Plastic Forming Co., Inc.,*

402 F.Supp. 1017, 1023 (D.Conn.1975), where the court said:

" * * * A settlement accepted with respect to injuries that have already occurred will not constitute an accord and satisfaction with respect to damages which have not yet accrued. * * * Nor will a settlement with respect to some issues of a dispute constitute an accord and satisfaction of other issues not explicitly included within the settlement provisions."

■ Plaintiff had no reason to believe that defendant's expressed desire to "straighten out" and "satisfy" his claim represented an intention other than to satisfy the claim plaintiff actually made. No reference was made in the parties' discussion to the possibility of a future loss, and we find no evidence from which the trial court could reasonably hold plaintiff should be charged with knowledge of that possibility and of defendant's intention to settle for it in the 1970 transaction. We conclude, as a matter of law, that plaintiff did not know of that possibility or of defendant's purported intention to include the present claim in that settlement. Furthermore, defendant had reason to know the meaning attached to the settlement by plaintiff, and plaintiff had no reason to know defendant had any different intention. In these circumstances, plaintiff's intention prevails. Restatement, Second, Contracts, § 227 (Student Ed. Tent. Drafts Nos. 1–7, 1973); see *Tamm, Inc. v. Pildis,* —— N.W.2d —— (Iowa 1976).

This conclusion is supported by our own cases and those from other jurisdictions. See *Kellogg v. Iowa State Tray. Men's Assn.,* supra; *Barr v. Clinton Bridge Works,* 179 Iowa 702, 161 N.W. 695 (1917); *Walston v. Calkins,* 119 Iowa 150, 93 N.W. 49 (1903); *Louis Schlesinger Co. v. Kresge Foundation,* 388 F.2d 208 (3 Cir. 1968); *Blockhead, Inc. v. Plastic Forming Co., Inc.,* supra; *The Southlands,* 27 F.2d 1010 (S.D.Tex.1928), aff'd 37 F.2d 474 (5 Cir. 1930); *Garland v. Linville Improvement Co.,* 184 N.C. 551, 115 S.E. 164 (1922); *Reinke v. West,* 303 S.W.2d 419 (Tex.Civ.App.1957); *Hicks Pub. Co. v.*

*Wisconsin Cent. Ry. Co.,* 138 Wis. 584, 120 N.W. 512 (1909).

The facts found by the trial court, viewed in their light most favorable to the judgment, do not support the court's conclusion that the parties reached an accord and satisfaction of the present claim in their transaction of June 2, 1970. The trial court erred in holding defendant established his defense of accord and satisfaction.

II. *Damages.* In its alternative findings, the trial court found defendant breached express and implied warranties that the cattle were disease-free when sold. The court held plaintiff would be entitled to $3000 in damages if the defense of accord and satisfaction were not established. In so holding, the court said, "plaintiff has some responsibility for the loss in view of his acceptance of the animals without testing * * * ." The court also limited plaintiff's damages for loss of the purchased herd to the difference in value of the purchased herd as warranted and its actual value at the time of purchase.

Plaintiff contends the trial court erred in reducing his damages by holding him partly responsible for defendant's breaches of warranty and in limiting his damages for loss of the purchased herd. The trial court recognized that compensation for damages to plaintiff's original herd should be determined by ascertaining the loss proximately caused by defendant's breaches of warranty, and plaintiff does not challenge that principle. In fact, he asserts it is equally applicable to the loss of the purchased cattle.

The measure of damages for breach of warranty in sales is provided in § 554.2714, The Code:

*Buyer's damages for breach in regard to accepted goods.*

1. Where the buyer has accepted goods and given notification (subsection 3 of section 554.2607), he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

2. The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, *unless special circumstances show proximate damages of a different amount.*

3. In a proper case any incidental and consequential damages under the next section may also be recovered. (Emphasis supplied.)

Incidental and consequential damages are defined in § 554.2715, The Code. The relevant portion of this section provides:

\* \* \* \* \* \*

(2) Consequential damages resulting from the seller's breach include

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty.

Exclusion or modification of warranties by words or conduct is governed by § 554.2316, The Code. That provision does not support the trial court's holding modifying defendant's warranties because of plaintiff's acceptance of the cattle without the brucellosis testing required by Code § 164.13. Although § 554.2316(3)(b) provides that when a buyer has "refused to examine" goods purchased "there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him," this restriction applies only when the seller has demanded that the buyer examine the goods. Uniform Commercial Code Comment, 35 I.C.A. 351 ("The language 'refused to examine' \* \* \* is intended to make clear the necessity for such demand."). No such demand was made here.

Defendant alleges the court's statement was merely a finding by the court that plaintiff failed in his duty to mitigate his damages. We do not believe the statement is reasonably susceptible to that construction. Nor do we need to decide how defendant's failure to plead plaintiff's failure to mitigate damages would affect that finding if it were made. See §§ 619.7, 619.8, The Code; *Ackerman v. Lauver*, 242 N.W.2d 342, 346 (Iowa 1976).

The trial court erred in reducing plaintiff's damages because of his acceptance of the cattle without testing.

We also find the court erred in limiting plaintiff's damages for loss of the purchased herd to the difference between its value as warranted and its actual value at the time of purchase. We think this is a proper case for application of the exception in § 554.2714(2), which is to be used when special circumstances show proximate damages of a different amount.

Uncontroverted evidence shows the contagious nature of the disease and the impossibility of ascertaining which of the purchased cattle may have been carrying it at the time of purchase. Some of the cattle which later became diseased were undoubtedly healthy when purchased. As late as April 1970 the disease had not reached cattle who manifested the disease in January 1971. In these circumstances it was neither realistic nor reasonable for the trial court to limit plaintiff's damages to conditions as they existed at the time of purchase. Plaintiff should not be penalized for retaining the cattle and caring for them in an effort to avoid the loss. *W & W Livestock Enterprises, Inc. v. Dennler*, 179 N.W.2d 484, 490 (Iowa 1970); see *Ruden v. Hansen*, 206 N.W.2d 713, 718 (Iowa 1973), and citations. This is particularly true here because defendant contends plaintiff should have kept the herd even longer, through additional tests and periods of quarantine, in an effort to save the herd rather than sell it for slaughter.

We hold plaintiff is entitled to fair and reasonable compensation for the loss he sustained to his entire herd as the proximate result of defendant's breaches of warranty. See *Mitchell v. Pinckney*, 127 Iowa 696, 104 N.W. 286 (1905).

Defendant argues this measure of damages is unreasonable because considerable evidence was adduced to show plaintiff did not feed the purchased cattle properly. As a result, defendant asserts, they weighed considerably less when sold for slaughter than they would have if properly cared for. If the trial court finds this to be true, the portion of plaintiff's loss attributable to that weight difference should not be found to be a proximate result of defendant's breaches of warranty. In addition, we believe defendant is correct in his contention that the trial court must consider income received by plaintiff from sale of the 43 calves of the purchased herd, as well as amounts realized in sale of the entire herd for slaughter, in determining plaintiff's damages. We do not intimate that the court must find the loss of the entire herd was proximately caused by defendant's breaches of warranty, nor do we suggest what amount should be awarded.

The case is reversed and remanded for fixing of plaintiff's damages on the present record.

REVERSED AND REMANDED.